# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 07-943

**STATE OF LOUISIANA**

**VERSUS**

**CLINTON B. SCHNEIDER, JR.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 05-2565
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**John Frederick Johnson**
**District Attorney, Seventh Judicial District**
**Bradley R. Burget**
**First Assistant District Attorney**
**4001 Carter Street, Suite 9**
**Vidalia, La 71373**
**(318) 336-5526**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Robert W. Malone**
**Malone Law Office**
**P. O. Box 3370**
**Pineville, LA 71361-3370**
**(318) 542-5070**
**Counsel for Defendant/Appellant:**
**Clinton B. Schneider, Jr.**

**EZELL, JUDGE.**

On February 15, 2006, the Defendant, Clinton B. Schneider, Jr., was charged by bill of information with dogfighting, in violation of La.R.S. 14:102.5. The Defendant entered a plea of not guilty on March 15, 2006.

A motion to suppress was filed on June 26, 2006, and denied at a hearing held on June 28, 2006. The Defendant filed a "Notice of Intent to Apply for Writ" seeking review of the trial court's denial of his motion to suppress on July 27, 2006. In *State v. Schneider*, an unpublished writ opinion bearing docket number 06-1296 (La.App. 3 Cir. 11/15/06), this court denied the Defendant's writ application.

Jury selection commenced on February 12, 2007, and the jury returned a verdict of guilty as charged on February 14, 2007. The Defendant filed a motion for post judgment verdict of acquittal on February 21, 2007, and a "Motion for Arrest of Judgment and/or New Trial" on March 26, 2007. Both motions were denied on March 28, 2007. On April 11, 2007, the Defendant was sentenced to serve five years at hard labor and to pay a $2,500 fine.

A "Motion for and Notice of Appeal" was filed on May 11, 2007. The Defendant is now before this court asserting six assignments of error. Therein, the Defendant contends:

1) there was insufficient evidence to support his conviction;

2) the trial court erred in denying his Motion to Quash, in which he alleged jurisdiction and venue were improper;

3) the trial court erred in denying his Motion to Quash, in which he alleged that La.R.S. 14:102.5 was unconstitutionally vague, overbroad, and/or ambiguous;

4) the trial court erred in not sustaining his objection to the State's improper rebuttal arguments and in not granting his motion for mistrial;

5) the trial court erred in not granting the Defendant's Motion in Limine, in that the trial court allowed the introduction of evidence that was

1

illegally seized and destroyed and that was not related to the jurisdiction or venue;

6) the trial court erred in not granting the Defendant's requested jury instructions and in not giving proper jury instructions.

We find these assignments of error lack merit.

**FACTS**

The Defendant was convicted of dogfighting. On the date of the offense, August 26, 2005, the Defendant had forty-three pit bulls at his residence. All of the dogs were subsequently euthanized because it was believed the dogs were used in or bred for illegal dogfighting.

**ASSIGNMENT OF ERROR NUMBER ONE**

In his first assignment of error, the Defendant contends the trial court erred in allowing the jury to convict him with insufficient evidence and in not granting his motion for post-judgment verdict of acquittal.[1]

The test for a sufficiency review is well settled. The supreme court has stated:

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 00-0674, (La.6/29/01)[,] 796 So.2d 649, 657 (citing *State v. Captville*, 448 So.2d 676, 678 (La.1984)).

> When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *Neal*, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under *Jackson* to prove guilt beyond a reasonable doubt to a

_____

[1] The Defendant does not discuss the Motion for Post-Judgment Verdict of Acquittal in brief to this court. Additionally, a transcript of the hearing on the motion was not transcribed and made a part of the appellate record or requested by the Defendant in a designation of record.

rational jury. *Id*. (citing *State v. Rosiere*, 488 So.2d 965, 968 (La.1986)).

*State v. Brown*, 03-897, p. 22 (La. 4/12/05), 907 So.2d 1, 18; *State v. Surratt*, 05-1406, (La.App. 3 Cir. 6/7/06), 932 So.2d 736, *writ denied*, 06-2100 (La. 6/1/07), 957 So.2d 165.

The Defendant was convicted of dogfighting, which is defined in La.R.S. 14:102.5, in pertinent part, as follows:

A. No person shall intentionally do any of the following:

(1) For amusement or gain, cause any dog to fight with another dog, or cause any dogs to injure each other.

(2) Permit any act in violation of Paragraph (1) to be done on any premises under his charge or control, or aid or abet any such act.

(3) Promote, stage, advertise, or be employed at a dogfighting exhibition.

(4) Sell a ticket of admission or receive money for the admission of any person to any place used, or about to be used, for any activity described in Paragraph (2).

(5) Own, manage, or operate any facility kept or used for the purpose of dogfighting.

(6) Knowingly attend as a spectator at any organized dogfighting event.

(7)(a) Own, possess, keep, or train a dog for purpose of dogfighting.

(b) The following activities shall be admissible as evidence of a violation of this Paragraph:

(i) Possession of any treadmill wheel, hot walker, cat mill, cat walker, jenni, or other paraphernalia, together with evidence that the paraphernalia is being used or intended for use in the unlawful training of a dog to fight with another dog, along with the possession of any such dog.

(ii) Tying, attaching, or fastening any live animal to a machine or power propelled device, for the purpose of causing the animal to be pursued by a dog, together with the possession of a dog.

3

(iii) Possession or ownership of a dog exhibiting injuries or alterations consistent with dogfighting, including but not limited to torn or missing ears, scars, lacerations, bite wounds, puncture wounds, bruising or other injuries, together with evidence that the dog has been used or is intended for use in dogfighting.

B. "Dogfighting" means an organized event wherein there is a display of combat between two or more dogs in which the fighting, killing, maiming, or injuring of a dog is the significant feature, or main purpose, of the event.

"[I]n the absence of qualifying provisions, the terms 'intent' and 'intentional' have reference to 'general criminal intent.'" La.R.S. 14:11. Therefore, dogfighting requires only general criminal intent. La.R.S. 14:11. "General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2).

The bill of information indicates the Defendant violated La.R.S. 14:102.5 in that "he did own, manage, or operate a facility kept or used for the purpose of dogfighting" and that he "owned, possessed, ke[pt], or trained dogs for the purpose of dogfighting." Thus the State had to prove the Defendant had the general intent to 1) own, manage, or operate a facility kept or used for the purpose of dogfighting, or 2) own, possess, keep, or train dogs for the purpose of dogfighting. Sergeant Gregory Jackson went to the Defendant's residence in Monterey, Louisiana, on August 26, 2005, in response to complaints from citizens regarding dogfighting and drug activity. Sergeant Jackson testified that upon approaching the residence, he observed the Defendant and another male around a "metal like fighting pen" and when the Defendant saw the police car, he ran into the woods. Sergeant Jackson testified there was a dog inside the metal pen and described the pen as being made of corrugated tin, circular, and fourteen to sixteen feet in diameter. Sergeant Jackson also observed an

4

"open aluminum utility building with a wide, maybe four by four foot entrance door open, wide open with two treadmills and a fan running and a light inside of it." Sergeant Jackson further testified that he observed other dogs that wore wide collars around their necks. The collars were attached to logging chains that were attached to vehicle axles that had been nailed into the ground. The dogs lived in fifty-five gallon drums and had concrete bowls to eat from. Additionally, there were seven puppies in a wooden cage.

Sergeant Jackson subsequently spoke to Amber Wallace, who also resided at the residence. She informed Sergeant Jackson that the dogs at the residence belonged to her, the Defendant, and Mr. White. She denied Sergeant Jackson's request for consent to search. Sergeant Jackson then prepared an application for a search warrant. A judge subsequently signed the warrant, and police searched the Defendant's residence. Inside the residence, police found syringes, medications, pictures with dogfighting material, instructions on how to prepare a dog for fighting, photographs of dogs fighting, photographs of dogs running on treadmills, and photographs of dogs using their mouths to hang onto ropes. Police also found letters from dogfighters commending the Defendant on good dogs that produced, the great fights that he put on, and invitations to dogfights.

Sergeant Jackson testified that State's Exhibits 2 through 15 were photographs of dogs that were on the Defendant's property on August 26, 2005. Sergeant Jackson testified as follows regarding one of the dogs he saw: "I noticed both his legs were scarred and looked like it was stitched up, you know, like he was bowed out like the legs had been broken or maimed." He also testified that the dog was "[c]hewed all up in the face." Sergeant Jackson testified that the wounds appeared to be fresh wounds. State's Exhibits 16 through 37 depicted how the dogs were chained. State's

5

Exhibit 38, in globo, consisted of photographs found inside the Defendant's residence of different dogs. Sergeant Jackson did not know where the photographs were taken.

Several items were seized from inside the Defendant's residence, including photographs of dogs fighting, break sticks (used to separate dogs during fights), and other paraphernalia indicative of dog fighting. These items were introduced at trial as States' Exhibits 39-60. After obtaining the search warrant and after "discovery of everything else," Sergeant Jackson contacted animal control to examine the dogs. Animal control could not respond that night, so a second search warrant was obtained on August 27, 2005.

On August 27, 2005, police seized a large wooden picture with three dogs on it. Police took several photographs, which were marked as State's Exhibits 63 through 84, and seized several other items that day. Included in these exhibits were photographs of the dogs' living conditions, a photograph of the round pen the Defendant was standing by when police arrived at his house on August 26, 2005, a photograph of the dogs after being euthanized, and two treadmills with chains and collars attached. State's Exhibits 87 through 125 were additional photographs taken on August 27, 2005.

Sergeant Jackson testified that he saw bruising on the necks of the dogs and that some of them had scars. He further testified that due to the size of the collars used, a lot of dogs had rubbing to the neck. Sergeant Jackson also noticed that the dogs were malnourished. Sergeant Jackson testified that the forty-three dogs found at the Defendant's residence ate from twelve concrete bowls.

Sergeant Jackson testified that fifteen of the dogs had scars from fighting. Sergeant Jackson was present when the dogs were euthanized. However, Sergeant Jackson testified that he never witnessed any dogfighting.

6

Lisa Smith, the Director of Concordia Animal Welfare, went to the Defendant's residence on August 27, 2005. Smith examined the pit bulls, determined that some of them had been involved in dogfighting, and eventually euthanized them all. Smith completed reports on each dog and took photographs. Her report, contained in State's Exhibits 131-154, contained detailed descriptions of the condition of twenty-four of the dogs and their varying states of neglect and debility. Smith went on to testify about the contents of her reports concerning seventeen dogs that had injuries, including: multiple bite and puncture wounds, lacerations to the head, face and legs, lameness, broken limbs, facial and body scarring, chain abrasions, and infections. She testified that several of the injuries had been sustained directly from fighting and that while some of the dogs' scars were the result of older fights, some of the injuries had occurred within one month of her examinations.

Kathryn Destreza, an employee of the Louisiana Society for the Prevention of Cruelty to Animals, was qualified as an expert in the field of dogfighting. She testified that the dog depicted in State's Exhibits 13 and 168 had scarring on the face, left side, over the left eye, and on both forearms, which were indicative of dogfighting. The wounds were received within a year of the photograph being taken. Destreza testified that the dog depicted in State's Exhibit 169 in globo had been fought and had scars on its head, face, forelegs, chin, shoulders, and neck. The scarring was "still new" and occurred within a year of the photograph being taken. The dog depicted in State's Exhibit 117 had scarring on the right side and on both forelegs from the ankle to the shoulder. Destreza testified that the scarring was indicative of dogfighting. The dog depicted in State's Exhibit 171 in globo with State's Exhibit 6 had scarring on the forearms and back legs, which was indicative of dogfighting. Destreza testified that she could conclusively tell these injuries were

7

caused in a dogfight. Additionally, the dog depicted in State's Exhibit 170 had engaged in a dogfight. Destreza further testified that there was no doubt in her mind that the animals depicted in State's Exhibits 68, 69, 70, and 71 had been fought in illegal dogfights.

Destreza testified that the injuries sustained by the dogs found at the Defendant's residence were not sustained as the result of two dogs engaging in a typical fight. Destreza testified that a normal fight between two dogs would last until one of the dogs showed submission and the dogs would not often sustain injuries in the encounter. Destreza further testified that in an illegal dogfight, the dogs would not stop fighting when one showed submission.

Destreza was questioned about the break sticks found at the Defendant's residence. She testified that once dogs are engaged in a fight, people must disengage them by using a break stick or a parting stick, which is slid into the back part of a dog's jaws to open its mouth. Destreza further testified that break sticks can be used when pit bulls are latched onto other things, such as a spring poll or toy. They can also be used when a dog attacks another animal. Destreza testified that the break sticks marked as State's Exhibits 59 and 60 had been used, as each had visible bite marks on it. Destreza further testified that it would not be uncommon to find break sticks in a kennel operation that raised "bully breeds."

Destreza identified State's Exhibit 86 as a slat mill or treadmill. A dog is placed on the treadmill, and secured in a harness so that it cannot get off the treadmill and the dog is made to run. Destreza testified that a treadmill can be used for purposes other than dogfighting, such as building the cardiovascular system of hunting dogs and weight pulling dogs. Weight pulling dogs are pit bull terriers that are used to pull large heavy weights short distances in a contest of strength. Destreza

8

testified that the dogs found at the Defendant's residence were not the type of dogs that would be used in a weight pull, as the dogs were in poor health. Destreza testified that the treadmill marked as State's Exhibit 85 looked like a modified treadmill and she had never seen a modified treadmill used to train a dog for a weight pull. Destreza further testified that there was no doubt in her mind that the treadmill was used to train dogs for dogfights. The visible substance on the treadmill was consistent with blood splatters. Destreza testified that when training for weight pulling, one would not find blood splatter on a treadmill, because the dogs are so well kept. Blood splatter would come from a smaller animal or the hide of an animal that is attached to the treadmill and used to entice a dog to continue to run toward it. Destreza testified that the blood also could have come from placing an injured animal back on the treadmill to rerun it. State's Exhibit 72, a small animal trap which was the same type that would be used to trap small animals to entice dogs, was found at the Defendant's residence. Based on the scarring to the dogs at issue, the break sticks, and other paraphernalia, Destreza testified that, in her opinion, the two treadmills were used to train dogs for dogfighting.

J.L. Simpson testified that he had known the Defendant for ten to twelve years and the Defendant lived in Catahoula Parish until July of 2005, when he moved to Concordia Parish. Simpson testified that the Defendant moved the dogs to his residence in Concordia Parish a few at a time. Simpson further testified that he was at the Defendant's residence in Concordia Parish three to five times a week and never saw the Defendant work with or condition any of the dogs. He was last at the Defendant's residence on August 25, 2005. Simpson testified that the Defendant operated a kennel, provided stud services, trained dogs that belonged to other people, boarded recovering dogs, and gave treatments such as heartworm shots to dogs.

Simpson testified the Defendant was keeping dogs that belonged to other people on August 26, 2005. Simpson was shown State's Exhibit 156 and testified that the dog depicted therein was never at the Defendant's residence.

Stoney Alexander testified that he had known the Defendant for three years and the Defendant moved to Concordia Parish in July of 2005. Alexander testified that he went to the Defendant's residence a couple of times a week to learn about bulldogs. Alexander further testified that the Defendant bred dogs, provided stud services, and kept dogs for other people. Additionally, the Defendant mixed medication to give puppies vaccinations. While at the Defendant's residence, he helped the Defendant walk and feed the dogs. However, he never saw the Defendant use treadmills. Alexander testified that the dog depicted in State's Exhibit 156 was one of the Defendant's dogs. The other two dogs in the photographs were not the same dog. Alexander further testified that he never saw a dog with large marks on the neck which were caused by its collar. Alexander further testified he was sure the Defendant was keeping dogs for other people on August 26, 2005.

In brief to this court, the Defendant asserts there was no direct evidence that he violated La.R.S. 14:102.5. Additionally, there is nothing illegal about possessing pit bulls, having treadmills, possessing break sticks, having pictures of dogs engaged in a fight, or owning and operating a licensed kennel.

The Defendant additionally asserts the State presented no evidence that on August 26, 2005, he had the intent to violate any provision of La.R.S. 14:102.5. He asserts the State had the burden to prove he had the specific intent to possess, own, or train a dog for the purpose of an illegal dogfight. Additionally, the State never mentioned the definition of an illegal dogfight as set forth in La.R.S. 14:102.5(B).

10

The Defendant further asserts the State did not identify any particular animal that was being used in an illegal dogfight or that was being trained with the intent and purpose to be used in an illegal dogfight. He asserts the State had the burden to prove what particular dog or dogs were being trained, possessed, or owned on August 26, 2005, for the purpose of dogfighting, not merely that he had dogs that could have been used for illegal purposes.

The Defendant references the testimony of Simpson and Alexander and asserts their testimony was unchallenged and provided the purposes for the equipment and paraphernalia at his residence. He then asserts it is not reasonable that the jury could have found him guilty by using circumstantial evidence to exclude every reasonable hypothesis of innocence.

## ANALYSIS

Sergeant Jackson testified that Wallace informed him that she, the Defendant, and White owned the dogs found at the residence. Thus, the State presented evidence that the Defendant owned the dogs. However, regardless of ownership, the Defendant possessed the dogs on August 26, 2005.

The State did not present any direct evidence that the dogs found at the Defendant's residence were involved in dogfighting. There were no witnesses to any actual dogfight, nor was there any video evidence of any dogfight. However, the State presented sufficient circumstantial evidence that dogs found at the Defendant's residence were involved in dogfighting. Further, La.R.S. 14:102.5 does not require direct evidence of an actual dogfight.

The State presented the testimony of Smith, who physically examined the dogs, and the testimony of Destreza, who reviewed photographs of the dogs. Smith and Destreza testified that several of the forty-three dogs found at the Defendant's

residence had injuries indicative of illegal dogfights. Some of the injuries were old, and some were considered recent. The dog depicted in State's Exhibit 155 had injuries that were received during a fight that had occurred within the last month. The dogs depicted in State's Exhibits 157 and 158 had wounds which were in the process of healing. The dog depicted in State's Exhibit 159 had recent wounds. The dog depicted in State's Exhibit 164 had recently suffered injuries indicative of dog fighting. The dog depicted in State's Exhibit 166 had suffered a laceration within the last month. The dog depicted in State's Exhibit 169 had recently been injured. The dogs depicted in State's Exhibits 160, 161, 162, 163, 165, 167, 168, 170, and 171 had signs of old injuries and scarring or Smith did not testify as to the age of the injuries and scars.

Destreza testified that the dog depicted in State's Exhibits 13 and 168 had scarring which was indicative of dogfighting and the wounds were received within a year of the photographs being taken. The scarring to the dog depicted in State's Exhibit 169 was "still new" and occurred within a year of the photograph being taken. Scarring on the dogs depicted in State's Exhibits 117, 170, and 171 was indicative of dogfighting. Destreza further testified that there was no doubt in her mind that the dogs depicted in State's Exhibits 68, 69, 70, and 71 had been fought in illegal dogfights.

Further, the State presented several items that were seized from the Defendant's residence that were consistent with dogfighting or training dogs to fight, including two used break sticks, two treadmills, one of which had possible blood splatter on it, a trap used to catch small animals, and voluminous dogfighting memorabilia. Destreza testified that there was no doubt in her mind that the treadmills found at the Defendant's residence were used to train dogs for dogfighting.

Based on the evidence presented, the State proved the Defendant owned or possessed dogs for the purpose of dogfighting on August 26, 2005. Further, the verdict in this matter indicates the jury may have chosen to discredit the testimony of Alexander and Simpson, who testified they had not seen the Defendant use the treadmills to train the dogs at his residence. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends the trial court erred in not granting his motion to quash, in that there was not proper jurisdiction and venue. The Defendant filed a motion to quash on February 12, 2007. Therein, the Defendant asserted the Concordia Parish Sheriff's Office had no jurisdiction and/or authority to arrest him in Concordia Parish. Additionally, there was no physical evidence tending to prove the crime of dogfighting was committed within the territorial boundaries of Concordia Parish. Furthermore, the complaints were received while the Defendant lived more than one hundred feet from the territorial boundaries of Concordia and Catahoula Parishes and was situated in Catahoula Parish. The motion was denied at a hearing held on February 12, 2007.

In brief to this court, the Defendant contends that, assuming the State's evidence tended to show that there was a crime committed, it would have been in Catahoula Parish. The Defendant asserts that in July of 2005, he moved from his residence in Catahoula Parish to Monterey, Louisiana in Concordia Parish. The Defendant asserts that all the evidence provided by the State that "was older than July of 2005" would have tended to show a crime during the time he resided in Catahoula Parish.

> La.Code Crim.P. art 611 provides, in part, "All trials shall take place in the parish where the offense has been committed, unless the

13

venue is changed." Furthermore, "[v]enue is jurisdictional in criminal cases." *State v. Burnett*, 33,739, p. 7 (La.App. 2 Cir. 10/4/00); 768 So.2d 783, 789, *writ denied*, 00-3079 (La.11/2/01); 800 So.2d 864, citing *State v. Brown*, 626 So.2d 851 (La.App. 2 Cir.1993). Because venue is jurisdictional, the failure of a party to object to improper venue does not give jurisdiction to that venue to act. *State v. Thibodeaux*, 96-308 (La.App. 3 Cir. 5/31/96); 680 So.2d 50. Thus, a criminal matter must be brought in the proper venue in order for the courts to have the power and jurisdiction to act.

*State v. Williams*, 01-1511, pp. 3-4 (La.App. 3 Cir. 5/8/02), 817 So.2d 470, 472.

(alteration in original)

Louisiana Revised Statutes 14:102.5(A)(5) provides that no person shall "[o]wn, manage, or operate any facility kept or used for the purpose of dogfighting." The Defendant owned or possessed the dogs at issue, the treadmills, and other paraphernalia while residing in Concordia Parish on August 25, 2005. Thus, jurisdiction and venue were proper in Concordia Parish. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the Defendant contends the trial court erred in not granting his motion to quash in that La.R.S. 14:102.5 is unconstitutionally vague, overbroad, and/or ambiguous.

The trial court denied the motion at a February 12, 2007 hearing, then the following exchange occurred:

**MR. BURGET:**

I think there was also an unconstitutional argument in regards to that motion to quash, as well. I think the argument was made it was unconstitutionally vague.

**THE COURT:**

That's what the motion speaks for itself, but the matter was submitted, Mr. Burget.

14

**MR. BURGET:**

Certainly.  I didn't know if Mr. Malone addressed all his issues but I didn't know if they were one in the same or separate issues.

**MR. MALONE:**

I hadn't, but I figured the results would be the same.

In brief to this court, the Defendant asserts that La.R.S. 14:102.5(A)(7)(b)(iii), which states, "Possession or ownership of a dog exhibiting injuries or alterations consistent with dogfighting, including but not limited to torn or missing ears, scars, lacerations, bite wounds, puncture wounds, bruising or other injuries, together with evidence that the dog has been used or is intended for use in dogfighting" is overbroad in that the mere possession of a dog that at any time in its life was once involved in dogfighting is illegal, whether the possessor had any knowledge of that fact or not.  Additionally, the possessor, even though he is not the owner of such a dog, could be subject to this provision.

The Defendant additionally asserts that La.R.S. 14:102.5(B), which states, "'Dogfighting' means an organized event wherein there is a display of combat between two or more dogs in which the fighting, killing, maiming, or injuring of a dog is the significant feature, or main purpose, of the event," is unconstitutionally vague and ambiguous because an average citizen could not understand the definition. The Defendant further questions what weight is to be given to the evidence discussed in the three subsections of La.R.S. 14:102.5(A)(7)(b).

> While there is no single procedure for assailing the constitutionality of a statute, it has long been held that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. *Reeder v. North*, 97-0239, p. 14 (La.10/21/97), 701 So.2d 1291, 1299; *Williams v. State, Dept. of Health & Hospitals*, 95-0713, p. 4 (La.1/26/96), 671 So.2d 899, 901; *Vallo v. Gayle Oil Co., Inc.*, 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 864-65.  This court has articulated this burden as composed of three tiers: "First of all, the plea of unconstitutionality must first be made in the trial court.  Next, the plea

15

of unconstitutionality must be specially pleaded. Finally, the grounds outlining the basis of unconstitutionality must be particularized." *Williams*, 95-0713 at pp. 4-5, 671 So.2d at 902 (internal citations omitted). These procedural rules exist to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. *Vallo*, 94-1238 at p. 9, 646 So.2d at 865. This opportunity to fully brief and argue the issue provides the trial court with thoughtful and complete arguments relative to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to adjudge the constitutionality of the statute.

*Istre v. Meche*, 03-1316, p. 4 (La. 10/17/00), 770 So.2d 776, 779.

The Defendant, in his motion to quash, did challenge the constitutionality of La.R.S. 14:102.5. However, he failed to sufficiently particularize the basis for his claim in his motion to quash and did not make any arguments on the issue at the hearing on the motion. The Defendant did particularize his claim in brief to this court; however, as noted, the basis was not first presented in the trial court. Therefore, this assignment of error will not be considered by this court. Uniform Rules—Courts of Appeal, Rule 1-3.

## ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, the Defendant contends the trial court erred in not sustaining his objection to the State's improper rebuttal arguments, in that the trial court would not issue an admonishment or grant his motion for mistrial.

During his closing argument, defense counsel informed the jury that Sergeant Jackson indicated the application for a search warrant, which requested permission to euthanize all dogs located at the Defendant's home, had no legal authority. Additionally, the document which had legal authority, the search warrant, did not give the police permission to euthanize the dogs.

During closing argument, State made the following comments:

The Court ordered it. The statute provides for it and that's what was done.

16

> Mr. Malone wants to show you the search warrant, he didn't show you the right one. There's two of them. I don't know what trial the man sat through.

Defense counsel later objected to these comments. Defense counsel then asked to see the signed order that allowed the police to euthanize the dogs found at the Defendant's residence and informed the trial court that he would like it to instruct the jury that the State was wrong. Defense counsel later stated the following: "No, he said there was an order from this court ordering the dogs to be destroyed and I lied to them and misrepresented. If he can't produce it, I think you need to instruct them --[.]".

The trial court eventually decided that it would give the jury instructions to the jury and, once the jurors retired to deliberate, defense counsel could "put all this on the record." After the jury retired, the State explained that during his closing argument, defense counsel picked up State's Exhibit 1 and argued that pursuant to that search warrant, the police did not have authority to euthanize the dogs.[2] The State then said the following: "My point to the jury during closing was there were two warrants. The second warrant on the 26, 27th day of August gave the authority, to my understanding, to the officers to euthanize the dogs. That's what they requested in the application." Defense counsel further argued the State was misleading the jury by saying there was a signed order to euthanize the dogs. Defense counsel subsequently stated, "I think it's grounds for a mistrial." The trial court denied the motion for mistrial, finding it did not think the jury was concerned about the order at issue or whether the dogs were euthanized pursuant to an order or application.

In brief to this court, the Defendant argues the State's comments during closing arguments caused irreparable damage to his case. First, the State made it appear that

---

[2]In the application for search warrant made a part of State's Exhibit 62, the police sought permission to euthanize the dogs found at the Defendant's residence.

defense counsel had lied and was trying to mislead the jury by not showing them the correct order. Second, it preserved the credibility of the State's witnesses, who relied on the fictitious document to justify their actions. Third, the State's misconduct prevented defense counsel from showing the pattern of inappropriate actions by the authorities. Finally, the fact that the jury was allowed to believe the trial court had issued an order to have all the dogs euthanized because they were fighting dogs, in effect, made the Defendant guilty because the jury did not have to try to determine if the dogs were fighting dogs, as the trial court had already made that determination.

The Defendant did not first raise at the trial court the issues regarding preservation of credibility, a pattern of inappropriate behavior, and the theory that the jury did not have to determine whether the dogs were fighting dogs. Accordingly, those issues may not form the basis of the Defendant's argument in this court. *State v. Smith*, 07-468 (La.App. 3 Cir. 10/31/07), 969 So.2d 694.

In support of his remaining argument, the Defendant cites La.Code Crim.P. arts. 770 and 771. Article 770 provides for mistrials as follows:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> (3) The failure of the defendant to testify in his own defense;  or
>
> (4) The refusal of the judge to direct a verdict.
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

18

Article 771 provides for admonishments as follows:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

In *State v. Draughn*, 05-1825, pp. 44-45 (La. 1/17/07), 950 So.2d 583, 614, *cert. denied*, __ U.S. __, 128 S.Ct. 537 (2007), the supreme court stated:

> Mistrial is a drastic remedy, and the determination of whether prejudice to the defendant has resulted from the prosecutor's comments lies in the sound discretion of the trial judge. *State v. Leonard*, 2005-1382 p. 11 (La.6/16/06), 932 So.2d 660, 667. Moreover, a trial judge has broad discretion in controlling the scope of closing argument. *State v. Prestridge*, 399 So.2d 564, 580 (La.1981). Although prosecutors are allowed wide latitude in choosing closing argument tactics, they should not misstate the evidence. However, even if the prosecutor exceeds the bounds of closing argument, this court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict. *State v. Martin*, 1993-285 p. 18 (La.10/17/94), 645 So.2d 190, 200, *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995).

The remarks made by the prosecutor were not within the scope of Article 770 and, therefore, a mistrial was not mandatory. Likewise, a mistrial was not warranted under Article 771.

Defense counsel thoroughly covered the issue regarding the legal authority of the application in support of the search warrant and its language seeking permission to euthanize all dogs found at the Defendant's residence during the testimony of

19

Sergeant Jackson and in his closing argument. Additionally, the State's remarks were not an intentional misstatement of the evidence, as the trial court even asserted it believed it had signed an order authorizing the euthanization of the dogs. Further, we find that the trial court was not convinced the State's remarks influenced the jury and contributed to the verdict, as the jury was called on to determine whether the dogs at issue were fighting dogs and not whether they were legally euthanized. Accordingly, the trial court did not abuse its discretion when denying the Defendant's motion for mistrial.

For these reasons, we find this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth assignment of error, the Defendant contends the trial court erred in not granting his motion in limine, in that the trial court allowed the introduction of evidence that was illegally seized and destroyed and evidence that was not related to the jurisdiction or venue.

The Defendant filed a motion in limine on February 12, 2007. Therein, the Defendant sought a pre-trial ruling on the admissibility of certain evidence, including any evidence that was destroyed before the Defendant had an opportunity to examine and/or inspect it and evidence or information obtained or used while the Defendant lived in a different jurisdiction.

At the hearing on the motion, the Defendant argued that police did not follow the statute when euthanizing the dogs, as the statute allowed the euthanization of fighting dogs and puppies could not have been fighting dogs. Because police did not follow proper procedure, the State should be prevented from introducing "any of it as far as the dogs." The motion was denied.

20

In brief to this court, the Defendant asserts that after the trial, it can be seen why the trial court denied the motion in limine in regard to the dogs that were destroyed. The Defendant asserts the trial court thought it had signed an order to euthanize the dogs seized from the Defendant, when it fact it had not. The Defendant asserts that as a result, all evidence regarding the forty-three dogs should not have been allowed into evidence. Further, the trial court should have limited all evidence to the time frame after the Defendant moved to Concordia Parish in July of 2005.

Louisiana Revised Statute 14:102.6 provides for the euthanization of fighting dogs as follows:

> A. (1) Any law enforcement officer making an arrest under R.S. 14:102.5 may lawfully take possession of all fighting dogs on the premises where the arrest is made or in the immediate possession or control of the person being arrested, whether or not the dogs are actually engaged in a fight at the time, and all paraphernalia, implements, equipment, or other property or things used or employed in violation of that Section.

> (2) The legislature finds and declares that fighting dogs used or employed in violation of R.S. 14:102.5 are dangerous, vicious, and a threat to the health and safety of the public. Therefore, fighting dogs seized in accordance with this Section are declared to be contraband and, notwithstanding R.S. 14:102.1, the officer may cause them to be humanely euthanized as soon as possible by a licensed veterinarian or a qualified technician and shall not be civilly or criminally liable for so doing. Fighting dogs not destroyed immediately shall be disposed of in accordance with R.S. 14:102.2.

The statute does not require a court order before dogs considered to be fighting dogs can be euthanized. Furthermore, the Defendant failed to make any arguments in this court and the trial court that the dogs at issue were illegally seized, that destruction of the dogs deprived him of the opportunity to present exculpatory evidence, or that the evidence pertaining to the dogs was unconstitutionally obtained. We find the destruction of the dogs was not a material fact at trial and whether the

21

dogs were properly euthanized was irrelevant to the Defendant's guilt or innocence. Thus, this claim lacks merit.

The Defendant's claim that the trial court should have limited all evidence to the time frame after he moved to Concordia Parish was addressed in assignment of error number two.

For the reasons set forth herein, this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER SIX

In his sixth assignment of error, the Defendant contends the trial court erred in not granting his requested jury instructions. The Defendant asserts he requested a charge on the issue of venue and/or jurisdiction and the trial court refused to give the instruction.

The following exchange regarding proposed jury instructions took place between defense counsel and the trial court:

MR. MALONE:

The requested jury instructions, I did request one and I can, if you want, I can see if I can find the exact language of it. George is supposed to email it to me and he hasn't yet, but one for venue or jurisdiction. Anything happening before he moved in this jurisdiction and if the Court wants to deny it, that's fine. I just want to make sure the record is clear.

THE COURT:

Let's make the record clear. Do you guys remember I told y'all to have any proposed jury instructions here at 9:00 yesterday morning and here we are he's rested and you may not even call witnesses and I've got to present these damn instructions to you guys now. So when it gets to this point, I don't entertain much.

MR. MALONE:

Yes, your honor.

The Defendant never actually presented the wording of the proposed jury instruction to the trial court at the time of the conference set forth above nor did he

22

re-urge the issue. Additionally, the proposed jury instruction is not contained in the record. For these reasons, we cannot review this issue.

The Defendant additionally asserts the jury was not informed of the provisions of La.R.S. 14:102.5(E), which reads as follows:

> E. Nothing in this Section shall prohibit any of the following activities:
>
> (1) The use of dogs for hunting.
>
> (2) The use of dogs for management of livestock by the owner, his employees or agents, or any other person having lawful custody of livestock.
>
> (3) The training of dogs or the possession or use of equipment in the training of dogs for any purpose not prohibited by law.
>
> (4) The possessing or owning of dogs with ears cropped or otherwise surgically altered for cosmetic purposes.

The Defendant contends this provision should have been included in the jury instructions even though no contemporaneous objection to the omission was made.

The Defendant did not request an instruction regarding La.R.S. 14:102.5(E) nor, did he object to the trial court's failure to give such an instruction. Therefore, the Defendant waived appellate review of this issue. La.Code Crim.P. arts. 801(C) and 841(A). Accordingly, this issue lacks merit.

## CONCLUSION

The Defendant's conviction is affirmed.

**AFFIRMED.**

23