# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-669

STATE OF LOUISIANA

VERSUS

HENRY BRYAN LOWE

****************

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-741-2003
HONORABLE STUART S. KAY, JR., DISTRICT JUDGE

****************

JAMES T. GENOVESE
JUDGE

****************

Court composed of Jimmie C. Peters, Marc T. Amy, and James T. Genovese, Judges.

SENTENCES AFFIRMED AS AMENDED;
REMANDED WITH INSTRUCTIONS.

Martin E. Regan, Jr.
Karla M. Baker
Martin E. Regan & Associates, P.L.C.
2125 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 522-7260
COUNSEL FOR DEFENDANT/APPELLANT:
    Henry Bryan Lowe


Henry Bryan Lowe
DOC #398433
Magnolia Unit - 4
Louisiana State Penitentary
Angola, Louisiana 70712
DEFENDANT/APPELLANT:  Henry Bryan Lowe, *Pro Se*

**David W. Burton**
**District Attorney – Thirty-Sixth Judicial District**
**Richard A. Morton, Assistant District Attorney**
**Post Office Box 99**
**DeRidder, Louisiana 70634**
**(337) 463-5578**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**GENOVESE, Judge.**

The Defendant, Henry Bryan Lowe, was charged by bill of information filed on January 7, 2004, with three counts of oral sexual battery, violations of La.R.S. 14:43.3; and one count of indecent behavior with juveniles, a violation of La.R.S. 14:81.  The Defendant was arraigned on January 27, 2004, and entered a plea of not guilty to all charges.

The Defendant was later charged by bill of indictment filed on March 24, 2004, with three counts of aggravated rape, violations of La.R.S. 14:42; three counts of sexual battery, violations of La.R.S. 14:43.1; and two counts of indecent behavior with juveniles, violations of La.R.S. 14:81.  The Defendant was arraigned on April 6, 2004, and entered a plea of not guilty to all charges.

Jury selection on the latter charges began on May 16, 2005, and trial commenced the following day.  On May 19, 2005, the jury returned verdicts of guilty on two counts of aggravated rape, two counts of sexual battery, and two counts of indecent behavior with juveniles.  On June 20, 2005, the Defendant filed a "Motion for Post-Verdict Judgment of Acquittal Pursuant to Code of Criminal Procedure Article 821" and a Motion for New Trial.  The trial court denied both motions that same day.

The Defendant was sentenced on June 24, 2005, to serve the remainder of his natural life without benefit of probation, parole, or suspension of sentence on each count of aggravated rape.  The Defendant was then sentenced to one hundred twenty months at hard labor on each count of sexual battery and to eighty-four months on each count of indecent behavior with juveniles.  All sentences imposed were ordered to run concurrently with one another.

1

The Defendant is now before this court asserting three assignments of error and six *pro se* assignments of error. The Defendant contends the following:

1)     the evidence was insufficient to convict him;

2)     the evidence used to convict him constitutes the same evidence and he is being punished pursuant to three different statutes for the same crime; and

3)     he requests a review for errors patent.

The Defendant asserts the following *pro se* assignments of error:

1)     the conviction was obtained upon La.R.S. 14:41(C)(1)(2), a criminal statute that is unconstitutionally vague and overbroad, in contravention of the First and Fourteenth Amendments to the United States Constitution;

2)     defense counsel rendered ineffective assistance in that he failed to file a motion to quash the indictment challenging the unconstitutionality of La.R.S. 14:41(C)(1)(2) because of vagueness and overbreadth, in contravention of the Sixth Amendment to the U.S. Constitution and LA.Const. Art. 1 § 13 (1974);

3)     defense counsel rendered ineffective assistance when he failed to object to the introduction of the Defendant's statements and other crimes evidence and by failing to obtain an independent expert witness to refute the testimony of the State's expert witnesses;

4)     the evidence was legally insufficient to sustain his convictions for aggravated rape under the "Oral Sexual Intercourse" provisions of La.R.S. 14:42;

5)     the record fails to reflect the peremptory challenges made by defense counsel with regards to the trial court's denial of his challenges for cause and the unrecorded bench conferences hence violated the mandates of La.Code Crim.P. arts. 795-843; and

2

6)      the trial court erred in failing to grant the Defendant's "Motion to Recover Fees

Paid by Appellant Which Were Previously Ordered to be Divided and/or Split

Among the Parties."

We find that these assignments of error lack merit.

The Defendant also filed a "Motion to Redact & Strike Portions of the Record

Not Entered into Evidence During the Criminal Trial" with this court on June 23,

2008. This motion was referred to the merits and is denied.

## FACTS

The Defendant was convicted of two counts of aggravated rape, two counts of

sexual battery, and two counts of indecent behavior with juveniles. The victims of

these offense were K.S. and A.S.[1]

## ERRORS PATENT & ASSIGNMENT OF ERROR NO. 3

In accordance with La.Code Crim.P. art. 920,[2] all appeals are reviewed for

errors patent on the face of the record. After reviewing the record, we find that there

is one error patent.

We note that the trial court failed to specifically deny the Defendant eligibility

for diminution of sentence on his convictions of aggravated rape, sexual battery, and

---

[1]The initials of the victims are being used in accordance with La.R.S. 46:1844(W).

[2]Louisiana Code of Criminal Procedure Article 920 provides:

> The following matters and no others shall be considered on appeal:
>
> (1) An error designated in the assignment of errors;  and
>
> (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.

3

indecent behavior with juveniles, which is required by La.R.S. 15:537(A).[3] *See State v. Houston*, 07-449 (La.App. 3 Cir. 10/31/07), 970 So.2d 667. This rendered the Defendant's sentence illegally lenient. Thus, pursuant to *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, and La.Code Crim.P. art. 882, we amend the Defendant's sentence to reflect that dimunition elibigility is denied under La.R.S. 15:537(A). We instruct the trial court to make a notation in the minutes reflecting the amendment.

### ASSIGNMENT OF ERROR NO. 1 & *PRO SE* ASSIGNMENT OF ERROR NO. 4

In his first assignment of error, the Defendant contends that the evidence was insufficient to convict him beyond a reasonable doubt. In his fourth *pro se* assignment of error, the Defendant contends that the evidence was legally insufficient to sustain his convictions for rape under the oral sexual intercourse provisions of La.R.S. 14:42.

> It is well established in our law that when a defendant raises the issue of sufficiency of evidence on appeal, the reviewing court must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found all of the critical elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also State v. Ordodi*, 06-207, (La.11/29/06), 946 So.2d 654.

*State v. Perkins*, 07-423, pp. 3-4 (La.App. 3 Cir. 10/31/07), 968 So.2d 1178, 1181,

---

[3]Louisiana Revised Statutes 15:537(A) provides:

> If a person is convicted of or pleads guilty to, or where adjudication has been deferred or withheld for a violation of R.S. 14:78 (incest), R.S. 14:78.1 (aggravated incest), R.S. 14:80 (felony carnal knowledge of a juvenile), R.S. 14:81 (indecent behavior with juveniles), R.S. 14:81.1 (pornography involving juveniles), R.S. 14:81.2 (molestation of a juvenile), R.S. 14:89(A)(1) (crime against nature), R.S. 14:89.1 (aggravated crime against nature), R.S. 14:93.5 (sexual battery of the infirm) or any provision of Subpart C of Part II of Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950, and is sentenced to imprisonment for a stated number of years or months, the person shall not be eligible for diminution of sentence for good behavior.

*writ denied*, 07-2408 (La. 5/9/08), 980 So.2d 688.

J.S. testified that she is married to B.S. and is the mother of two girls: K.S., born December 4, 1996, and A.S., born October 30, 1997. In November 2003, the family lived in a trailer with two bedrooms and one bathroom. J.S. testified that she and her husband, along with two smaller children, slept in one bedroom, and A.S. and K.S. slept in the other. At that time, A.S. and K.S. were both six years old.

J.S. testified that, during the evening of November 6, 2003, the Defendant was at her home drinking beer with her husband.[4] J.S. recalled the Defendant helping A.S. and K.S. with their homework and reading them a book. Additionally, he stayed for dinner.

J.S. testified that A.S. and K.S. went to bed that night at approximately 9:00 p.m., and then she went to bed. At that time, the Defendant was in the girls' bedroom reading them a book. J.S. indicated that this activity was not unusual. J.S. further testified that, sometime later, her husband went to bed, and she thought the Defendant had left their residence. The following morning, J.S. got her husband off to work and sat on the couch to watch television or listen to the radio.

J.S. testified that, when K.S. woke up, she approached J.S. and told her that the Defendant "licked her star," meaning her vagina. A.S. subsequently awoke and told her mother that the Defendant "licked and touched her kitty," meaning her vagina. J.S. then called a friend to talk about the matter and subsequently phoned the police. Approximately one and a half hours later, the police arrived at her residence. She did not call B.S. to inform him of the allegations.

Deputy Wesley Solver responded to a call concerning a sexual assault on

---

[4]J.S. testified that the Defendant flirted with her and attempted to have a relationship with her, but that they were just friends.

November 7, 2003. Deputy Solver testified that, when he arrived at the home of J.S., J.S. and K.S. were upset and A.S. was crying. J.S. reported that K.S. had informed her that, during the previous night, the Defendant touched, licked, and kissed her privates. K.S. informed Detective Solver that the Defendant had kissed her on the mouth and kissed and licked her private part. However, A.S. would not speak to Deputy Solver.

Detective Jeanie Faciane testified that she arrived at the home of J.S. that day at approximately 10:45 a.m. Detective Faciane testified that J.S. informed her that K.S. said that the Defendant had licked her on her "star," and she then woke A.S., who stated that the Defendant licked her on her private parts.

Detective Faciane took a recorded statement from K.S. and A.S. During the recorded interview with Detective Faciane, K.S. stated that she was six years old. She informed Detective Faciane that the Defendant licked and kissed her "star." When this occurred, K.S. was in her bedroom on the floor with a blanket. K.S. further indicated that the Defendant put her hand on his "cootie," and she touched gooey stuff. K.S. stated that she saw the Defendant kiss and lick A.S.'s private part, and, at that time, A.S. was snoring.

K.S. circled a picture of a penis when referring to a "cootie" and a vagina when referring to her "star." K.S. also circled a picture of a mouth when asked what the Defendant used to lick her. Detective Faciane also testified that K.S. drew a picture of what she saw when the Defendant licked A.S.'s vagina. The drawings to which Detective Faciane referred were admitted into evidence as State's Exhibit B-3.

During the recorded interview with Detective Faciane, A.S. stated she was six years old. She informed Detective Faciane that her mother hated the Defendant. A.S.

6

further indicated that the Defendant licked in her "cat" and put his finger in her "cat." A.S. stated that this occurred in the living room on the couch or the bed. A.S. further stated that she saw the Defendant lick K.S.'s "cat." A.S. also told Detective Faciane that the Defendant touched her "cat" with his "cootie" on another occasion. A.S. stated that peepee came out of the Defendant's "cootie." A.S. told Detective Faciane that her mother saw the Defendant touch her "cat" with his "cootie." However, J.S. denied this occurred.

A.S. circled a mouth and a hand when asked what the Defendant used to touch her private part. A.S. also drew what the Defendant's penis looked like and a mark underneath where his penis would be to show where the "wet pee-like stuff came out." Detective Faciane further testified as follows:

> She indicated that he put his finger on her kitty cat and that he also touched her down there. There is another circle; and she put an "X" there, that she saw Mr. Lowe put his mouth on her sister right there as well; and she also circled the mouth, that he kissed her on her mouth.

The drawings Detective Faciane referenced were admitted into evidence as State's Exhibit A-3.

After the interview, Detective Faciane brought K.S. and A.S. to see Dr. Michael Perkins. Detective Faciane testified that K.S. told Dr. Perkins that the Defendant licked her "star" and that he made her touch his "cootie, and there was something gooey." A.S. then informed Dr. Perkins that the Defendant licked her "kitty cat."

After the visit with Dr. Perkins, Detective Faciane returned to the residence. She took a black light into the girls' bedroom and looked for body fluids. Detective Faciane testified that body fluids glow when viewed with a black light, and part of a blanket found in the girls' room was glowing; therefore, she seized the blanket.

7

Dr. Perkins, who was qualified as an expert in the field of pediatric medicine, testified that he examined K.S. and A.S. on November 7, 2003. Dr. Perkins testified that K.S. said that the Defendant kissed and licked her and made her touch gooey stuff on his privates. Dr. Perkins testified that, based on the fact that a vaginal exam was done, he understood K.S. to mean that the Defendant kissed and licked her privates. K.S. then stated that the Defendant moved on to A.S. During the genital exam of K.S., Dr. Perkins noted that her hymen was intact and noticed irritation of the introitus, the area between the outside of the body and the hymen.

Dr. Perkins testified that A.S. told him that the Defendant licked her "cat" and inserted his finger into her "cat." According to family members, A.S. used the term "cat" to refer to her privates. Dr. Perkins performed a genital exam on A.S. and found irritation on the labia at the six o'clock position. The hymen was also found to be lopsided, which would be consistent with digital penetration. On cross-examination, Dr. Perkins testified that irritation could be caused by bicycle riding, straddling and climbing over fences, and improper hygiene.

Leann Suchanek, an expert in forensic serology, tested several pairs of panties belonging to K.S. and A.S., vaginal swabs obtained from K.S. and A.S., and a Mickey Mouse blanket found at their residence. The panties contained no hair, blood, or semen, and the vaginal swabs contained no blood or semen. However, the blanket tested positive for semen.

Julie Golden, an expert in the field of forensic DNA analysis, testified that the sperm DNA profile from the blanket was consistent with that of the Defendant.[5] Golden extracted DNA from skin cells found on the blanket, and those cells were

---

[5]According to the record, the possibility that the DNA did not belong to the Defendant was one in greater than ten billion.

consistent with the DNA of K.S., A.S., and the Defendant. Golden testified that she would not expect to find saliva DNA on a vaginal swab that was taken fourteen hours after an incident.

Detective William Galbreath testified that the Defendant was arrested on November 7, 2003, at 9:05 p.m. The Defendant made a statement to police on November 8, 2003, at 12:08 a.m. In that statement, the Defendant admitted that he was at the girls' residence on November 6, 2003. He stated that, on the night in question, he played with K.S. and A.S. in the living room and in the girls' bedroom. The Defendant stated that he passed out on the floor in the girls' room and left after he woke up. The Defendant further stated that he did not intentionally fondle the girls. However, he was asked if it was possible that he touched the girls and did not remember. The Defendant responded, "It is possible but not intentional."

The Defendant gave a second statement to the police on November 9, 2003, at 2:38 p.m. In that statement, the Defendant indicated he was not awake when J.S. and her husband went to bed. He last remembered K.S. and A.S. jumping in their room. The Defendant guessed he was passed out for a couple of hours, and he left after he awoke. The Defendant indicated that he passed out because he was drinking alcohol. When asked if he had any reason to believe what the girls were saying, the Defendant responded as follows: "I don't know. I've heard them spin yarn like that I said before, but I don't think they would lie about this. I don't know." The Defendant was subsequently asked if he believed that he did what he was accused of, and he responded, "I would have to say, I guess so."

At trial, K.S. testified that she was eight years old. She testified that once, while she was in her bedroom, the Defendant licked and kissed her private. K.S.

9

further testified that A.S. was in the room when this occurred, but A.S. was asleep. K.S. indicated she saw the Defendant lick and kiss the private parts of A.S. When K.S. woke up the next morning, she told her mother what had occurred. K.S. further testified that, before she went to bed, she made a pallet on the floor of her bedroom for the Defendant and gave him a blanket. She further indicated that the Defendant normally stayed in her room.

At trial, A.S. testified that she was seven years old. A.S. did not recall what she told Detective Faciane on the day following the events at issue, but did remember drawing the pictures she was shown during her testimony. A.S. further testified that she had never told anyone something that was untrue. Subsequently, the following exchange occurred:

> Q. Did you ever tell Ms. Jeanie that your mom had seen Mr. Lowe do something to you that he wasn't supposed to do?
>
> A. (NODS HEAD IN AN AFFIRMATIVE MANNER.)
>
> Q. That wasn't true, was it?
>
> A. (SHAKES HEAD IN A NEGATIVE MANNER.)
>
> Q. That is a, "No," right? You are shaking your head. Is that a, "No"?
>
> A. (NODS HEAD IN AN AFFIRMATIVE MANNER.)
>
> Q. And now you are saying, "Yes." Is that right?
>
> A. (NODS HEAD IN AN AFFIRMATIVE MANNER.)

B.S. testified that, on the night in question, he went to bed at approximately 8:00 p.m., and K.S. and A.S. were still up at that time.[6] B.S. further testified that, at that time, the Defendant was reading a book to the girls, and J.S. was in the living

---

[6]B.S. had previously pled guilty to criminal damage to property, disturbing the peace, and simple battery. He also testified that his wife and the Defendant had a sexual relationship.

room. He was unsure what time J.S. actually went to bed because he was asleep. The following morning, J.S. woke him up, and he left for work between 3:30 and 3:45 a.m. B.S. did not know what time the Defendant left the residence.

B.S. further testified that, on November 7, 2003, he got an urgent message from his office that he needed to call home. He testified that he spoke to J.S. between 10:00 a.m. and 12:00 p.m. She informed him that the Defendant had touched K.S. and A.S. At that time, B.S. told his wife that "this was bullshit, don't call no one, do anything until I get home."

B.S. testified that the Defendant did not appear to be drunk on the night in question. However, B.S. made a statement to the Office of Community Service wherein he stated that the Defendant drank a lot, and, "I guess his drunkenness is normal." B.S. later testified that he did not know how much beer the Defendant drank that night.

B.S. further testified that he was present, along with Daniel Mosley, when J.S. said, "she put one innocent man in jail, and she ain't got a problem doing it again." This statement was made after November 7, 2003.

Daniel Mosley testified that he was incarcerated at the time of the Defendant's trial and had been incarcerated with the Defendant in August 2004.[7] Mosley further testified that he knew J.S. and B.S. After November 2003, Mosley stated that he heard J.S. tell another female that "some black guy had messed over her; and she said that she had done set up one guy up in DeRidder in jail and she knows how to do it and she would do it again." Mosley testified that J.S. never specifically mentioned the Defendant when making that statement.

---

[7]Mosley testified that he was incarcerated for schedule II narcotics and was awaiting trial. Mosley admitted to having an extensive criminal history.

The Defendant asserts that the evidence presented at trial was insufficient to sustain his convictions for aggravated rape under the oral sexual intercourse provision of La.R.S. 14:42. The Defendant further asserts that there was no "oral vaginal or anal penetration or sexual intercourse." In his *pro se* brief, the Defendant argues that penetration is an essential element of the oral sexual intercourse provision of La.R.S. 14:42, and, without such evidence, his convictions for aggravated rape must be reversed. The Defendant further argues that the physical evidence did not support the girls' claims that he kissed and licked their vaginas. Accordingly, he contends that no reasonable juror could have found that he committed aggravated rape.

The Defendant further argues that the evidence was not sufficient to convict him of sexual battery and indecent behavior with juveniles. The Defendant asserts that J.S. bragged about putting a man in jail for false charges. Additionally, A.S. and K.S. were young, impressionable, and could have very easily been coached. The Defendant further argues that J.S. was not credible, and that her testimony was contradicted by neutral parties such as the police, Daniel Mosley, and B.S.; therefore, it was not out of the realm of possibility that A.S. and K.S. falsified their claims to satisfy their mother's need to exercise control over the Defendant by sending him to jail on false charges. The Defendant further asserts that the testimony of A.S. and K.S. was inconsistent, and they were unwilling to accuse him of the inappropriate behavior reported to police in November 2003.

*AGGRAVATED RAPE:*

The Defendant was charged with the aggravated rape of K.S. and A.S. The bill of information alleged that the Defendant had oral sexual intercourse with both girls. The Defendant was convicted on both counts.

Louisiana Revised Statutes 14:41 defines rape as follows:

> A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
>
> B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
>
> C. For purposes of this Subpart, "oral sexual intercourse" means the intentional engaging in any of the following acts with another person:
>
> (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
>
> (2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

Louisiana Revised Statutes 14:42, in pertinent part, defines aggravated rape as follows:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

### A. S.:

A.S. would not testify about the details of the offense at trial. However, J.S. testified that A.S. told her that the Defendant "licked and touched her kitty," meaning her vagina. Dr. Perkins testified that, during his examination of A.S., she told him that the Defendant licked her "cat." Dr. Perkins performed a genital exam on A.S. and found irritation on the labia at the six o'clock position. The hymen was also found to be lopsided, which would be consistent with digital penetration. Further,

13

during a taped interview, A.S. informed Detective Faciane that the Defendant licked in her "cat." During her taped interview, K.S. stated that she saw the Defendant kiss and lick A.S.'s private part. At the time of the incident, A.S. was six years old.

*K. S.:*

At trial, K.S. testified that the Defendant licked and kissed her private part. J.S. testified that K.S. told her that the Defendant "licked her star," meaning her vagina. Detective Solver testified that K.S. told him the Defendant licked her private part. Dr. Perkins testified that K.S. said the Defendant kissed and licked her. Based on the fact that a genital exam was done, Dr. Perkins testified that he understood K.S. to mean that the Defendant kissed and licked her privates. During the genital exam of K.S., Dr. Perkins noted that the hymen was intact and noticed irritation of the introitus, the area between the outside of the body and the hymen. During a taped interview, K.S. informed Detective Faciane that the Defendant licked and kissed her "star." During her taped interview, K.S. stated that she saw the Defendant lick A.S.'s "cat." At the time of the offense, K.S. was six years old.

Viewing the evidence in the light most favorable to the prosecution, we find that the evidence presented to the jury established that the Defendant kissed and/or licked the vaginas of K.S. and A.S., and each girl was under the age of thirteen at the time of the offenses. Louisiana Revised Statutes 14:41 requires penetration when the rape involves vaginal or anal intercourse. However, contrary to the Defendant's assertion, penetration is not required for oral sexual intercourse, which is what occurred in the instant case. Accordingly, the Defendant's convictions for aggravated rape are affirmed.

14

*SEXUAL BATTERY:*

The Defendant was charged in the bill of information with committing sexual battery upon A.S., in that he touched her genitals with his fingers. The Defendant was also charged with committing sexual battery upon K.S., in that he had K.S. touch his genitals. The Defendant was convicted of committing sexual battery upon A.S. and K.S.

Louisiana Revised Statutes 14:43.1, in pertinent part, defines sexual battery as follows:

> A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
>
> (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
>
> (2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.

*A. S.:*

J.S. testified that A.S. informed her that the Defendant touched her "kitty," meaning her vagina. During a taped interview, A.S. informed Detective Faciane that the Defendant put his finger in her "cat." A.S. also told Dr. Perkins that the Defendant inserted his finger into her "cat."

*K. S.:*

In a recorded interview, K.S. told Detective Faciane that the Defendant put her hand on his "cootie" and that she touched gooey stuff. K.S. circled a picture of a penis when referring to a "cootie." Doctor Perkins testified that K.S. informed him

15

that the Defendant made her touch gooey stuff on his privates. Additionally, the DNA profile from semen found on a blanket in the girls' bedroom matched that of the Defendant.

Viewing the evidence in the light most favorable to the prosecution, we find that the evidence presented to the jury proved, beyond a reasonable doubt, that the Defendant touched A.S.'s vagina and made K.S. touch his penis.

K.S. and A.S. were not asked if they consented to the Defendant's acts. Thus, the State was required to prove that the girls were under the age of fifteen and that they were three years younger than the Defendant. The State was also required to prove that the girls were not the Defendant's spouse.

At the time of the offenses, K.S. and A.S. were six years old. However, there was no reference to the Defendant's age at trial. In *State v. Teague*, 04-1132, pp. 3-4 (La.App. 3 Cir. 2/2/05), 893 So.2d 198, 201-02, this court discussed proof of age as follows:

"[t]here is . . . no requirement that the proof of age be established by direct evidence." *State v. Zihlavsky*, 505 So.2d 761, 764-65 (La.App. 2 Cir.), *writ denied*, 511 So.2d 1152 (La.1987) (quoting *Barnett v. State*, 488 So.2d 24 (Ala.Crim.App.1986)).

[J]ury observation and circumstantial evidence can be used to infer the age of a defendant when no direct evidence of defendant's age is presented. *State v. Day*, 98-964 (La.App. 5 Cir. 3/10/99), 735 So.2d 56, 59; *State v. Zihlavsky*, 505 So.2d 761 (La.App. 2 Cir.1987); [*State v.*] *Shelton*, [545 So.2d 1285 (La.App. 2 Cir.1989)] *supra*; *State v. Guidry*, 94-897 (La.App. 3 Cir. 3/1/95), 651 So.2d 458.

*State v. Noil*, 01-521, p. 24 (La.App. 5 Cir. 12/26/01), 807 So.2d 295, 313, *writ denied*, 02-0276 (La.10/25/02), 827 So.2d 1177. The circumstantial evidence presented "need not be, in and of itself, conclusive of the defendant's age." *Zihlavsky*, 505 So.2d at 765 (quoting *Barnett*, 488 So.2d 24).

16

The court in *Zihlavsky*, 505 So.2d 761, emphasized that the defendant was referred to as a "man" by witnesses in determining whether the state proved the defendant was over the age of seventeen. The court concluded that the term "man" reflected an opinion regarding the maturity of the person it described. The court stated that it placed minimal weight on that factor and noted that in some cases reference to a defendant as a "man" had been viewed as circumstantial evidence that the defendant was older than eighteen. The court additionally considered the fact that the defendant was tried as an adult. In *State v. Zeringue*, 03-697 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, *writ denied*, 03-3523 (La. 4/23/04), 870 So.2d 298, when considering whether the state proved the defendant's age, the court noted that the trial court could have inferred that the defendant had been previously charged and sentenced as an adult, indicating that the IMPACT program was not available to juvenile offenders and the fact that defense counsel did not object when the defendant was questioned about his criminal record. The court also noted that the defendant was tried as an adult without objection. *See also Noil*, 807 So.2d 295.

This court went on to state the following:

> The Defendant was present during the course of trial; therefore, the judge had an opportunity to view him. DeWayne Spillman testified that he was the Defendant's parole officer at one time and as a condition of his parole, the Defendant was to have no contact with anyone under the age of eighteen. Additionally, Mr. Spillman was asked the following question by the State: "For instance, if he were with another male adult and go pick up nine, ten, eleven-year-old children and carry them to eat, would that be a violation?" The Defendant was repeatedly referred to as a "man," "Mr. Teague," and "Mr. Sam" throughout the course of trial. Also, the Defendant was tried as an adult and not as a juvenile.

> This evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that the State proved beyond a reasonable doubt that the Defendant was over the age of seventeen.

*Id*. at 202.

In the instant case, the Defendant was present during trial and was, therefore, observed by the jury. The Defendant was also repeatedly referred to as "Mr. Bryan" during the course of trial. Furthermore, B.S., the father of K.S. and A.S., testified that he "kind of grew up knowing" the Defendant. This evidence, viewed in the light most favorable to the prosecution, was sufficient to prove beyond a reasonable doubt

17

that the Defendant was more than three years older than the girls at the time of the offenses.

In *State v. Pitre*, 04-1134 (La.App. 3 Cir. 2/9/05), 893 So.2d 1009, this court found that circumstantial evidence could be used to determine whether the victim was married to the defendant at the time the offenses of carnal knowledge occurred. This court went on to state the following:

> At the time of the offenses, B.F. was thirteen years old, was in seventh grade, and lived with her father. B.F.'s sexual relationship with the Defendant began after she encountered him while she was at the police department because she had run away from home. She and the Defendant had sex on only three occasions, and this took place in a car and at a hotel. Additionally, B.F.'s testimony indicates that she ended her relationship with the Defendant when she found out he was dating Chateuse Richard. Based on this evidence, we find that a rational trier of fact could have concluded that B.F. was not married to the Defendant at the time of the offenses.

*Id*. at 1015-16.

Based on the fact that K.S. and A.S. were six years old, we find that a rational trier of fact could conclude that the girls were not married to the Defendant at the time of the offenses.

Based on the evidence presented at trial, we affirm the Defendant's convictions for sexual battery.

## *INDECENT BEHAVIOR WITH JUVENILES:*

The Defendant was charged with committing two counts of indecent behavior with juveniles, in that he did have oral sexual intercourse with K.S. while in the presence of A.S. and did have oral sexual intercourse with A.S. while in the presence of K.S. The Defendant was convicted of both counts of indecent behavior with juveniles.

At the time of the commission of the crime, November of 2003, La.R.S. 14:81

18

defined indecent behavior with juveniles as follows:

> A. Indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.

In *State v. Whatley*, 06-316, p. 8 (La.App. 3 Cir. 11/2/06), 943 So.2d 601, 607, *writ denied*, 06-2826 (La. 8/31/07), 962 So.2d 424, this court discussed the meaning of the terms lewd and lascivious as follows:

> As stated in *State v. Sturdivant*, 27,680, p. 6 (La.App. 2 Cir. 2/28/96), 669 So.2d 654, 658, "[t]he word 'lewd' means lustful, indecent and signifies that form of immorality which relates to sexual impurity carried on in a wanton manner," and "[t]he word 'lascivious' means tending to incite lust, indecent, obscene and tending to deprave the morals in respect to sexual relations."

The supreme court discussed the term "in the presence of" in *State v. Interiano*, 03-1760, p. 9 (La. 2/13/04), 868 So.2d 9, 16, as follows:

> [I]n the absence of a physical touching upon the person of the child, La.R.S. 14:81(A) requires the knowing commission of a sexual act such that the child sees or senses that a sexual act is taking place, even if the child is not able to articulate or even comprehend what the offender is doing, for a violation to occur.

**A. S.:**

During her taped interview, A.S. told Detective Faciane that she saw the Defendant lick K.S.'s "cat." Detective Faciane testified that A.S. put an "X" on a drawing indicating where she saw the Defendant put his mouth on K.S. The drawing Detective Faciane referenced was admitted into evidence as State's Exhibit A-3.

**K. S.:**

During her taped interview, K.S. told Detective Faciane that she saw the Defendant kiss and lick A.S.'s private part. Detective Faciane testified that K.S. drew

19

a picture of what she saw when the Defendant licked A.S.'s vagina.  The drawing to which Detective Faciane referred was admitted into evidence as State's Exhibit B-3.

As previously noted, both A.S. and K.S. were six years old at the time of the offenses.  Additionally, as previously set forth herein, the evidence was sufficient to prove that the Defendant was over the age of seventeen at the time of the offenses.  Thus, there was more than two years' age difference between the girls and the Defendant.

In *State v. Wade*, 39,797 (La.App. 2 Cir. 8/9/05), 908 So.2d 1220, *writs denied*, 06-109 and 06-148 (La. 6/2/06), 929 So.2d 1251, the defendant was charged with the aggravated rape of B.C. and with indecent behavior with a juvenile, L.C.  On appeal the defendant argued that the evidence was insufficient to convict him of indecent behavior with a juvenile as L.C. was asleep during the rape of B.C.  Therefore, lewd or lascivious acts were not committed "upon the person or in the presence of" L.C.

> At trial, the state presented the testimonial evidence of B.C. and L.C. to prove that the twenty-five-year-old defendant knowingly committed a sexual act in the presence of eight-year-old L.C. The victim, B.C., testified that the defendant vaginally and orally raped her within such close proximity to L.C. that, when L.C. awoke, the defendant was able to touch her face in an attempt to quiet her.  L.C. testified that when she woke up and heard "screaming and stuff," the defendant was very close to B.C., and B.C.'s bra was "hanging."

*Id*. at 1226.

The second circuit concluded that, "[a]lthough there was no physical touching of L.C. in an indecent manner . . . the defendant's conduct certainly qualified as an 'indecent sexual display in the presence of a child under the age of seventeen.'" *Id.* The court went on to note that "[t]he evidence support[ed] the finding that L.C. sensed that a sexual act was taking place, even though she was unable to articulate or comprehend what the defendant was doing to her sister[,] B.C." *Id*. at 1226.

20

In the case at bar, viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient for a jury to find, beyond a reasonable doubt, that the Defendant committed the offenses of indecent behavior with juveniles.

*CREDIBILITY:*

The Defendant argues that in the past J.S. had falsely accused a person of committing a crime, that she was not credible, and that her testimony was contradicted. He further argues that A.S. and K.S. were young and impressionable, that they could have very easily been coached, that their testimony was inconsistent, and that they were unwilling to accuse the Defendant of the inappropriate behavior reported to the police in November 2003.

In briefing this assignment of error, the Defendant does not point to specific instances in which J.S.'s credibility was called into question or contradictions between her testimony and that of other witnesses.

Deputy Solver testified that he did not see J.S. coaching K.S. when she reported the offenses. None of the girls' relatives were present in the room while their taped statements were being recorded by Detective Faciane. Additionally, Dr. Perkins testified that J.S. did not tell the girls what to say during their visit with him. The jury heard the testimony from all witnesses in this matter and made a credibility determination. That credibility determination will not be second-guessed by this court. *Perkins*, 968 So.2d 1178.

Therefore, we find that assignment of error number one and *pro se* assignment of error number four lack merit.

21

# ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the Defendant contends that the evidence used to convict him constituted the same evidence and that he is being punished pursuant to three different statutes for the same crime.

The Defendant argues that he was overcharged by the District Attorney with eight sex offenses, which violated the constitutional protections against multiple punishments. He maintains that the allegations are clearly limited to one transaction that allegedly occurred in just a matter of minutes. The Defendant asserts that the State used the same evidence, i.e., the statements of K.S. and A.S. that he allegedly licked and kissed their vaginas, to prove two counts of aggravated rape, two counts of sexual battery, and two counts of indecent behavior with juveniles.

The Defendant is actually asserting a double jeopardy claim. In *State v. Cloud*, 06-877, pp. 5-6 (La.App. 3 Cir. 12/13/06), 946 So.2d 265, 269-70, *writ denied*, 07-86 (La. 9/21/07), 964 So.2d 331, this court discussed double jeopardy as follows:

> In *State v. Barton*, 02-163, pp. 17-18, (La.App. 5 Cir. 9/30/03), 857 So.2d 1189, 1201-02, *writ denied*, 03-3012 (La.2/20/04), 866 So.2d 817, the court summarized the two tests used by Louisiana courts . . . in examining violations of double jeopardy as follows:
>
>> The "distinct fact" test, commonly referred to as the *Blockburger* test, is taken from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) as follows:
>>
>>> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.
>>
>> *Accord*, *State v. Knowles*, 392 So.2d 651, 654 (La.1980).

22

The second test is the "same evidence" test. In *State v. Steele*, 387 So.2d 1175, 1177 (La.1980), the Louisiana Supreme Court explained that test as follows:

> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial. . . .

The "same evidence" test is broader than *Blockburger*, "the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." *State v. Steele*, 387 So.2d at 1177. Although the Louisiana Supreme Court has accepted both the *Blockburger* test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. *State v. Miller*, 571 So.2d 603, 606 (La.1990).

In *State v. Burnett*, 33,739, pp. 14-15 (La.App. 2 Cir. 10/4/00), 768 So.2d 783, 793, *writ denied*, 00-3079 (La. 11/2/01), 800 So.2d 864, the second circuit stated:

> [The same evidence] test depends on the proof necessary for a conviction, not the evidence that is actually presented at trial. *State v. Knowles*, [392 So.2d 651 (La.1980)]. The "same evidence" test does not preclude a prosecution for more than one offense for a defendant who "goes on a crime spree and violates more than one criminal statute within a short time span." *State ex rel. Smith v. Phelps*, 345 So.2d 446 (La.1977).

In this case, the Defendant was convicted of two counts of aggravated rape, violations of La.R.S. 14:42, two counts of sexual battery, violations of La.R.S. 14:43.1, and two counts of indecent behavior with juveniles, violations of La.R.S. 14:81.

In *Burnett*, 768 So.2d 783, the defendant argued that his convictions for sexual battery and oral sexual battery constituted double jeopardy. The court noted that "Burnett touched the victim's genitals and anus with his hands, thereby committing the offense of sexual battery. He then touched the victim's genitals with his mouth,

23

thereby committing the offense of oral sexual battery." *Id*. at 794. The court found that "Burnett performed two distinct acts" against the victim within a short period of time and that "[t]he same conduct did not constitute the basis for each charge." *Id*. The court ruled that, under the facts of the case, "Burnett's constitutional rights against double jeopardy were not violated." *Id.* at 793-94.

In the instant case, the Defendant touched the vaginas of K.S. and A.S. with his mouth and tongue, thereby committing aggravated rape. He touched A.S.'s vagina with his hand, thereby committing sexual battery. The Defendant also had K.S. touch his penis with her hand, thereby committing sexual battery. Therefore, the Defendant's convictions for aggravated rape and sexual battery do not constitute double jeopardy as the same conduct did not constitute the basis for each offense.

The offense of indecent behavior with juveniles requires proof of additional facts which aggravated rape and sexual battery do not require. In the instant case, the State was required to prove that the lewd and lascivious act, oral sex, was performed on each of the victims in the presence of her sister. Therefore, the convictions for aggravated rape, sexual battery, and indecent behavior with juveniles do not constitute double jeopardy.

For these reasons, this assignment of error lacks merit.

### *PRO SE* ASSIGNMENT OF ERROR NO. 1

In his first *pro se* assignment of error, the Defendant contends that his convictions were obtained under La.R.S. 14:41(C)(1)(2), a criminal statute that is unconstitutionally vague and overbroad in contravention of the First and Fourteenth Amendments to the United States Constitution.

Louisiana Revised Statutes 14:41, in pertinent part, provides as follows:

C. For purposes of this Subpart, "oral sexual intercourse" means the intentional engaging in any of the following acts with another person:

(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.

(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

In brief, the Defendant asserts that "**[La.]R.S. 14:41(C)(1)(2)** is vague and over broad and lacks constitutionality as it traps the innocent by not providing fair warning, and further omits the **necessary actus reas and causation** of the element of sexual penetration, which is necessary to commit the crime of rape."

"[T]he plea of unconstitutionality must first be made in the trial court." *State v. Schneider*, 07-943, p. 15 (La.App. 3 Cir. 4/2/08), 981 So.2d 107, 116 (quoting *Istre v. Meche*, 03-1316, p. 4 (La. 10/17/00), 770 So.2d 776, 779). Because the Defendant did not first make his claim of unconstitutionality in the trial court, this assignment of error is not properly before this court for review.

### *PRO SE* ASSIGNMENT OF ERROR NO. 2

In his second *pro se* assignment of error, the Defendant contends that defense counsel rendered ineffective assistance in that he failed to file a motion to quash the indictment challenging the unconstitutionality of La.R.S. 14:41(C)(1)(2) on the grounds that it was vague and overbroad.

The Defendant argues that the failure of La.R.S. 14:41(C)(1)(2) to provide the essential element of sexual penetration mislead him to his prejudice. Also in his brief, the Defendant asserts that he "knew that there was absolutely no sexual penetration[;] however, he was still convicted for oral sexual intercourse under [La.R.S. 14:42(A)(4)] even though no penetration occurred, and none of the alleged

25

victims testified to the effect that any penetration occurred."

> [T]he standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this Court in *State v. Washington*, 491 So.2d 1337, 1339 (La.1986), requires respondent to show not only that his trial attorney's performance fell below an objective standard of reasonableness under prevailing professional norms but also that counsel's inadequate performance prejudiced him to the extent that the trial was rendered unfair and the verdict suspect, *i.e.* that counsel's errors undermined the proper functioning of the adversary process.

*State v. Matthis*, 07-691, p. 7 (La. 11/2/07), 970 So.2d 505, 509.

We note that "statutes are presumed constitutional, and any doubt is to be resolved in the statute's favor." *State v. Cunningham*, 04-2200, p. 8 (La. 6/13/05), 903 So.2d 1110, 1116. Further, as noted in assignment of error number one, La.R.S. 14:41 requires penetration when the rape involves vaginal or anal intercourse. However, penetration is not required for oral sexual intercourse. Based on the clear wording of La.R.S. 14:41 and La.R.S. 14:42, the Defendant cannot prove that he was prejudiced by defense counsel's failure to file a motion to quash. Accordingly, we find that this assignment of error lacks merit.

### *PRO SE* ASSIGNMENT OF ERROR NO. 3

In his third *pro se* assignment of error, the Defendant asserts that defense counsel rendered ineffective assistance of counsel when he failed to object to the introduction of the Defendant's statement; when he failed to object to other crimes evidence; when he failed to request a hearing under La.Code Evid. arts. 403 and 404(B); and, when he failed to obtain an independent expert witness to refute the testimony of the State's expert witnesses.

***Defendant's Statement and Other Crimes Evidence:***

The Defendant asserts that, in the statement he gave on November 8, 2003, he

26

informed police of an earlier episode. Additionally, "evidence of other crimes was entered into evidence through B.L.'s statements." Further, Detective Faciane testified regarding the Defendant's statement and also testified with regard to other crimes evidence.

The Defendant does not specifically point to other crimes evidence contained in the statement he gave on November 8, 2003, or any other statement he gave to police. Additionally, a review of the record does not reveal any testimony regarding other crimes evidence. Thus, the Defendant has failed to meet his burden of proof regarding this issue. Accordingly, this portion of the assignment of error lacks merit.

***Independent Expert Witness:***

The Defendant asserts that defense counsel failed to call "any medical expert on child sexual abuse" as a witness or consult such an expert for trial preparation. The Defendant further asserts that defense "[c]ounsel essentially conceded that the physical evidence [presented by the State] was indicative of sexual penetration without conducting an investigation to determine whether that was the case." The Defendant avers that, had defense "counsel conducted such an investigation, [he] would likely have discovered that exceptionally qualified medical experts could [have been] found who would [have testified] that the prosecution's physical evidence was not indicative of oral sexual penetration" and would not have corroborated "the alleged victims' stories." Defense counsel therefore could "have presented a strong affirmative case that the charged crimes did not occur and that the alleged victims's [sic] stories were incredible in their entirety."

The Defendant focuses on Dr. Perkins' testimony that linked redness and irritation found during the examinations of K.S. and A.S. to sexual abuse and

27

contends that defense counsel did not "test or evaluate the scientific basis of Dr. Perkins' assertions." Additionally, "counsel did not locate any contemporaneous studies that cast doubt on any link between [] redness and irritation and [] sexual abuse." In summary, the Defendant asserts that "defense counsel's failure to consult an expert, failure to conduct any relevant research, and failure to request copies of the underlying studies relied on by Dr. Perkins contributed significantly to his defense counsel's ineffectiveness."

The record does not indicate that Dr. Perkins relied on any scientific studies in forming his opinion that the redness and irritation he found upon examining K.S. and A.S. was the result of sexual abuse. We note that Dr. Perkins admitted that the irritation he found could have been caused by bicycle riding, straddling and climbing over fences, and improper hygiene. Furthermore, sexual penetration was not at issue in the instant case. Thus, the Defendant cannot prove that he was prejudiced by defense counsel's alleged failure to consult with or call as a witness an expert in child sexual abuse. Accordingly, this portion of the assignment of error lacks merit.

### *PRO SE* ASSIGNMENT OF ERROR NO. 5

In his fifth *pro se* assignment of error, the Defendant contends that "[t]he record fails to reflect the peremptory challenges made by defense counsel with regards to the trial court's denial of his challenges for cause." Additionally, Defendant contends that "[t]he unrecorded bench conferences . . . violate[] the mandates of [La.Code Crim.P. arts.] 795 and 843."

The Defendant asserts that the record of the proceedings does not indicate which jurors were challenged for cause and peremptorily challenged based upon the denial of defense counsel's challenges for cause. The Defendant further asserts that,

28

given the likelihood that defense counsel exhausted his peremptory challenges, the uncertainty with respect to how many challenges for cause defense counsel made unsuccessfully, and the absence of other contemporaneous records accounting for the selection process, his conviction should be reversed as he has been precluded from obtaining judicial review of the trial court's judgments regarding defense counsel's challenges for cause.

In support of his arguments, the Defendant cites *State v. Pinion*, 06-2346 (La. 10/26/07), 968 So.2d 131. In that case, the supreme court stated the following:

> This Court has never articulated a per se rule either requiring the recording of bench conferences or exempting them from the scope of La.C.Cr.P. art. 843, which requires in felony cases the recording not only of the evidentiary portions of trial but also of "the examination of prospective jurors . . . and objections, questions, statements, and arguments of counsel." *State v. Hoffman*, 98-3118, p. 50 (La.4/11/00), 768 So.2d 542, 586. The Court has instead conducted a case-specific inquiry to determine whether the failure to record the conferences results in actual prejudice to the defendant's appeal. As a general rule, the failure of the record to reflect the argument of counsel on objections, even when made in open court, does not affect a defendant's appeal because it does not hinder adequate review of the trial court's ruling. *State v. Johnson*, 438 So.2d 1091, 1104 (La.1983). Thus, the failure to record bench conferences will ordinarily not affect the direct review process when the record suggests that the unrecorded bench conferences had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant. . . .
>
> On the other hand, in *State v. Landry*, 97-0499 (La.6/29/99), 751 So.2d 214. . . . This Court reversed the defendant's capital conviction and sentence and remanded for a new trial because the deficiencies deprived the defendant of his constitutional right of appeal and judicial review. *Landry*, 97-0499 at 4, 751 So.2d at 216. The Court thereby reaffirmed that "it is not the defendant's obligation to insure an adequate record . . . . it is the duty of the court . . . . to see that the court reporter makes a true, complete and accurate record of the trial." *Landry*, 97-0499 at 3, 751 So.2d at 216 (citing *American Bar Association Standards Relating to the Function of the Trial Judge*, § 2.5 (1972)).
>
> In the present case, the trial court and not defense counsel had the duty to insure that the bench conferences involving jury selection were properly recorded because La.C.Cr.P. art. 795(B)(2) *required* that

29

counsel for the state and defense exercise their peremptory challenges in side bar conferences out of the hearing of jurors, and further required that the court refrain from attributing the strikes to either side on the record when excusing the jurors. Counsel therefore could reasonably assume that the court had taken adequate steps to preserve the record of the side-bar conferences for appeal just as counsel could reasonably assume that the evidentiary portions of trial were also adequately recorded and preserved for review. Counsel could also reasonably assume that the court had discharged its correlative duty of insuring that the minutes of the proceedings would conform to the requirements for the lodging of appeals in criminal cases in the courts of appeal and this Court, and thus include a list of challenges for cause and peremptory challenges in addition to a list of jurors selected to try the case. *See* La.S.Ct. Rule I, § 6(b); Rule 2-1.5(3) and (4), Uniform Rules Courts of Appeal.

. . . .

In this particular instance, by operation of art. 795(B)(2), bench conferences are a material part of the proceedings for purposes of La.C.Cr.P. art. 843 and their omission from the present case, given the reasonable likelihood that counsel exhausted his peremptory challenges, the uncertainty with respect to how many cause challenges the defense made unsuccessfully, and the absence of other contemporaneous records accounting for the selection process, *e.g.*, adequate minutes or jury strike sheets, requires reversal of defendant's conviction and sentence.

*Id*. at 134-36.

The Defendant contends bench conferences that occurred during jury selection were not recorded. However, that assertion is incorrect. Bench conferences that occurred during jury selection are evidenced in the record by the indications "(CONFERENCE AT SIDE BAR)" and end with "(CONFERENCE AT SIDEBAR CONCLUDED)." The Defendant further contends that, during the first round of voir dire, Janie Bourque was tentatively selected as a member of the jury. However, the record is void of evidence of which jurors were challenged for cause and then peremptorily challenged based upon the denial of counsel's challenges for cause.

The juror challenge sheets indicate which jurors were challenged for cause and, if those challenges were denied, whether a peremptory challenge was used to strike

a juror and by whom the strike was used.  Thus, the Defendant's claims are incorrect.

The Defendant further contends that, at the conclusion of the second round of voir dire, Paul Cador was tentatively selected as a member of the jury.  The record reveals that the prospective juror, Claudia Ann Roberson, was challenged for cause.  As to the remaining challenges, the Defendant asserts that the record does not indicate which jurors were challenged for cause and then peremptorily challenged.

The record indicates that Ms. Roberson was challenged for cause and dismissed. William Bailey, James Williams, and Dennis Riley were then excused.  The transcript does not indicate that they were challenged for cause.  The minutes of court indicate that Mr. Williams was challenged by the State and that Mr. Bailey and Mr. Riley were challenged by the defense.  The juror challenge sheets confirm what is contained in the minutes of court.

The Defendant further asserts that Helene Hebert was tentatively selected for jury service during the ninth round of voir dire, but was later dismissed peremptorily by use of a back-strike; however, the record does not indicate whether defense counsel or the State struck Ms. Hebert.  The record reflects the following exchange between defense counsel and the trial court:

BY MR. FONTENOT:

> I have one peremptory challenge that was remaining, and I wish to exercise that.

BY THE COURT:

> All right. If you'll go back and mark that.

(CONFERENCE AT SIDEBAR CONCLUDED)

BY THE COURT:

> I have been saying throughout the trial that the panel

> of twelve has been tentatively accepted. There is a right of any party to issue a peremptory challenge to a juror without giving a cause for the issuing of that challenge at any time prior to the time that the panel is sworn.
>
> Ms. Hebert, I'm going to have to excuse you from this Jury. If you'll have a seat out in the courtroom, we'll draw another name to fill that vacancy before we proceed to the selection of the alternate juror.

Thus, the minutes of court indicate that the defense used a back-strike to excuse Ms. Hebert. The juror challenge sheets confirm what is found in the minutes of court.

The Defendant also asserts that the record does not indicate who used a peremptory challenge to back-strike Patricia Wiley. Ms. Wiley was excused from jury service. Prior to the time she was excused, the parties discussed several challenges for cause; however, Ms. Wiley was not one of the potential jurors discussed at that time. The minutes of court indicate that Ms.Wiley was challenged by the State. Additionally, the juror challenge sheets indicate that the State used a peremptory strike to excuse Ms. Wiley.

The Defendant asserts that, during the twelfth round of voir dire, potential juror William Gratten was excused and that there was no documentation as to whether he was challenged for cause or excused by a peremptory challenge. Mr. Gratten was excused from jury service. The transcript does not indicate why. The minutes of court indicate that he was excused for cause; however, the juror challenge sheets indicate that the State used a peremptory challenge to strike Mr. Gratten.

The Defendant further asserts that, during the selection of the alternate juror, Genevieve Pharris was excused, and the record does not indicate whether she was challenged for cause or peremptorily challenged. Ms. Pharris was excused from jury service. The transcript does not indicate why; however, the minutes of court indicate

that Ms. Pharris was challenged by the State. Additionally, the juror challenge sheets indicate that the State used a peremptory challenge to strike Ms. Pharris.

Based on the fact that the side bar conferences were recorded and the fact that the juror challenge sheets clearly indicate the manner in which the State and the defense exercised challenges during jury selection in this case, we find that this assignment of error lacks merit.

### *PRO SE* ASSIGNMENT OF ERROR NO. 6

In his sixth *pro se* assignment of error, the Defendant contends that the trial court erred in failing to grant his January 31, 2008 "Motion to Recover Fees Paid by Appellant Which Were Previously Ordered to be Divided and/or Split Among the Parties September 14, 2005."

On September 14, 2005, defense counsel filed a "Motion to Dismiss" the Defendant's appeal. In paragraph two of that motion, defense counsel stated the following: "Furthermore, movant suggests that the above captioned matter be dismissed with prejudice and costs should be divided among the parties." The portion stating "be divided among the parties" was struck through, and "paid by the defendant" was written in. The same language appears on the order signed by the trial court on September 14, 2005. We cannot determine if the amended language was added by defense counsel or the trial court.

Subsequently, in *State v. Lowe*, an unpublished writ opinion bearing docket number 07-1240 (La.App. 3 Cir. 1/15/08), this court found that the trial court was divested of jurisdiction when it dismissed the Defendant's appeal and ordered that the Defendant's appellate rights be reinstated. This court further ordered the trial court to prepare the record for appeal and lodge the record in this court with the costs to be

paid by the Defendant. This court relied on La.Code Crim.P. art. 916, which provides for the divesting of jurisdiction of the trial court as follows:

> The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction to take any action except as otherwise provided by law and to:

> (1) Extend the return day of the appeal, the time for filing assignments of error, or the time for filing per curiam comments in accordance with Articles 844 and 919.

> (2) Correct an error or deficiency in the record.

> (3) Correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence.

> (4) Take all action concerning bail permitted by Title VIII.

> (5) Furnish per curiam comments.

> (6) Render an interlocutory order or a definitive judgment concerning a ministerial matter not in controversy on appeal.

> (7) Impose the penalty provided by Article 844.

> (8) Sentence the defendant pursuant to a conviction under the Habitual Offender Law as set forth in R.S. 15:529.1.

On February 11, 2008, the Defendant filed a "Motion to Recover Fees Paid That Were Divided Among the Parties." Therein, the Defendant asserted that defense counsel was paid five thousand dollars for purposes of the appeal and any costs thereof. The Defendant further asserted that he paid the costs for the trial transcript. The Defendant argued that any disbursement of funds ordered by the trial court was done without proper jurisdiction and amounted to malfeasance in office. The Defendant asked the trial court to order that any funds previously divided among the parties be returned to him. The trial court issued the following ruling: "Request denied[,] appeal pending[,] court is without authority - matter must be addressed on

34

appeal."

In his brief to this court, the Defendant asserts that, on September 14, 2005, the trial court granted defense counsel's motion to split and/or divide the fees among the parties. The Defendant further asserts that the trial court erred in failing to grant his motion for recovery of those fees because, at the time the trial court issued the order granting defense counsel's motion, it had been divested of jurisdiction upon the signing of an order of appeal. The Defendant further argues that the trial court retained jurisdiction to rule on his motion to recover fees because his motion was "relative to a ministerial matter" as envisioned by La.Code Crim.P. art. 916(6).

The order dismissing the Defendant's appeal contained language ordering that the costs be paid by him. The entirety of the order was invalid due to the trial court's lack of jurisdiction. Furthermore, the trial court properly failed to consider the Defendant's motion to recover fees at the time it was filed, as the trial court was divested of jurisdiction due to the pending appeal in this matter. Thus, we find that this assignment of error lacks merit.

## MOTION FILED BY THE DEFENDANT
## & REFERRED TO THE MERITS

On June 23, 2008, the Defendant filed with this court a "Motion to Redact & Strike Portions of the Record Not Entered into Evidence During the Criminal Trial." In that motion, the Defendant requested that this court redact or strike the following from the record:

1) Record page 128 (Vernon Parish)[;]

2) Record pages 203-205 (Statement by Yevette Clark)[;]

3) Record pages 206-208 (Statement by Melody Perkins)[;]

4) Record pages 213-215[,] 217[;]

35

5) Record pages 288-291 (Motion for Admission of 404B and 412 Evidence)[; and]

6) Record pages 292-300.

The Defendant asserts that these record pages exhibit evidence which was not entered into evidence at trial and are not properly before this court.

Record page 128 is an arrest report regarding the Defendant. A statement by Yevette Clark is found on pages 203-05 of the record. Pages 206-08 of the record contain a statement made by Melody Perkins. An interview worksheet and interview of Courtney Clemons is found on pages 213-15 of the record. Record page 217 is a form with sections entitled "Addresses of Household Members" and "Disabilities of Child Subjects" and lists allegations of lack of adequate supervision. These documents were all attachments to the State's response to the Defendant's discovery request.

The "State's Memorandum in Support of Motion to Determine Admissibility of C.E. Articles 404B & 412.2 Evidence" is found on pages 288-91 of the record. Attachments to that motion are found on pages 292-300 of the record.

The documents referenced by the Defendant in his motion were not admitted into evidence and were not referred to by any witness at trial. As this court reviews only the trial transcript and evidence submitted at trial when conducting a sufficiency review, we deny the Defendant's motion.

## CONCLUSION

The Defendant's convictions are affirmed, and his "Motion to Redact & Strike Portions of the Record Not Entered into Evidence During the Criminal Trial" is denied. The Defendant's sentence is amended to reflect that dimunition is denied pursuant to La.R.S. 15:537(A). This matter is remanded to the trial court with

36

instructions to make a notation in the minutes reflecting the amendment.

**SENTENCES AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**