STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-0726

STATE OF LOUISIANA

VERSUS

R.B.[1]

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 48,475
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

**CONVICTIONS AFFIRMED.  REMANDED WITH INSTRUCTIONS.**

**Michael Harson**
**District Attorney**
**Laurie A. Hulin**
**Assistant District Attorney**
**Fifteenth Judicial District**
**100 North State Street, Suite 215**
**Abbeville, LA 70510**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

_____

[1]Pursuant to La.R.S. 46:1844(W), initials of the defendant, the minor victims, and the other witnesses will be used to protect the identity of the victims.

**Richard Allen Spears**
**Attorney at Law**
**101 Taylor Street**
**New Iberia, LA 70560**
**(337) 367-1960**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **R.B.**

PETERS, J.

The State of Louisiana (state) charged the defendant, R.B., by grand jury indictment, with four counts of sexual battery, violations of La.R.S. 14:43.1; four counts of molestation of a juvenile, violations of La.R.S. 14:81.2; and four counts of indecent behavior with a juvenile, violations of La.R.S. 14:81. After a bench trial, the trial court acquitted the defendant of the four counts of indecent behavior with a juvenile but convicted him of the remaining eight counts. The trial court then sentenced the defendant to serve ten years at hard labor without the benefit of probation, parole, or suspension of sentence on each of the four counts of sexual battery (to be served concurrently), and thirty years at hard labor without the benefit of probation, parole, or suspension of sentence on each of the four counts of molestation of a juvenile (to be served concurrently with each other, but consecutive to the ten-year concurrent sentences imposed for the sexual battery convictions). The defendant has perfected this appeal, arguing in his single assignment of error that the evidence is insufficient to support the verdicts reached. For the following reasons, we affirm the convictions in all respects but remand the matter to the trial court with instructions to amend the court minutes so that the minutes correctly reflect the sentences imposed for the convictions of molestation of a juvenile.

## APPLICABLE LAW

The offenses for which the defendant was convicted involve four minor children:.

(1) A.H., who was nine years old when trial commenced on November 3, 2009. She is the daughter of R.H., who was the defendant's live-in girlfriend when the allegations first arose.

The remaining victims are the three children of T.L., who is R.H.'s sister:

(2) B.G., a male child who was twelve years old when trial commenced on November 3, 2009;

(3) Br.G., a female child who was nine years old when trial commenced on November 3, 2009; and

(4) T.G., a male child who was eleven years old when trial commenced on November 3, 2009.

Louisiana Revised Statutes 14:43.1(A) defines sexual battery as follows:

> Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
>
> (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
>
> (2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.

At the time of the offenses at issue, La.R.S. 14:81.2(A) defined molestation of a juvenile as follows:

> Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

The record reflects that the defendant was born on July 29, 1957, and was fifty-two years old at the time of trial. Thus, the elements of proof involving the age differential between the defendant and his victims in both statutes are not at issue.

2

Additionally, because of the respective ages of the children, consent is not an issue. La.R.S. 14:43.1(A).

With regard to the offenses of sexual battery, as the statute applies in this matter, the essential element at issue is whether the state established beyond a reasonable doubt that the defendant touched the anus or genitals of any of his victims with any instrumentality or any part of his body. Sexual battery may be committed even if the victim is clothed, with no "skin on skin contact," because "clothing constitutes an instrumentality with which to touch the victim's genitals." *State v. Bouton*, 615 So.2d 23, 25-26 (La.App. 3 Cir. 1993).

With regard to the molestation offenses, the elements at issue are (1) whether the defendant committed a lewd or lascivious act upon the person or in the presence of the victim—and if he did, (2) whether the act was committed with the intention of arousing or gratifying his sexual desires or those of his victim; and (3) whether the act was committed by the use of (a) force, violence, duress, menace, psychological intimidation, or threat of great bodily harm, or (b) influence by virtue of a position of control or supervision over the victim. *See State v. Teague*, 04-1132 (La.App. 3 Cir. 2/2/05), 893 So.2d 198.

The defendant's only assignment of error addresses the sufficiency of the evidence used to convict him.

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent

3

necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (some citations omitted).

## DISCUSSION OF THE FACTUAL RECORD

The state's first involvement with the defendant with reference to these charges occurred on April 30, 2007, when Sergeant James Gleason of the Vermilion Parish Sheriff's Department received a complaint from T.L. and her boyfriend, S.G., to the effect that the defendant was in possession of child pornography and that a juvenile was residing with him. During his investigation of this complaint, Sergeant Gleason came into possession of four computer diskettes containing "approximately 11 digital photographs of what appeared to be a prepubescent female['s] genitals and buttocks." A subsequent search of the defendant's home uncovered another computer disk inside the defendant's digital camera containing similar images.

At trial, B.G. testified that the incidents giving rise to the criminal charges occurred at his grandfather's house where his aunt, R.H., and the defendant were living. According to B.G., while Br.G. was showing him, A.H., and T.G. some images on a camera, the defendant joined them and instructed them to undress. They did so, according to B.G., because the defendant threatened them. He stated that after they removed their clothes, they "had to play with each other." B.G. explained that this meant playing with their "private parts," which he described as the parts where one would "tee-tee or pee-pee" and his "butt." B.G. testified that as he touched A.H.'s private parts, the defendant was taking pictures.[2]

---

[2]None of the photographs seized in the investigation were photographs depicting the activities testified to by the child victims.

4

B.G. testified that he did not see A.H. touch anyone, and observed that at all times the defendant remained clothed and did not touch anyone in his presence. He did testify, however, that Br.G. later told him that the defendant touched her in her private parts and that both Br.G. and A.H. later told him that they had been subject to similar activity from the defendant on more than one occasion. According to B.G., sometime after the incident he told his grandmother that he and the other children "got messed with."

A.H. testified that the defendant touched her on her "bottom," where she would "pee-pee from," on three occasions, and that these incidents occurred at her grandfather's house and in a building adjacent to the house. Furthermore, according to A.H., the defendant told her that he would "rape [her] mama" if she told anyone.[3] With regard to the camera incident testified to by B.G., A.H. acknowledged that the defendant made the children take their clothes off and had them take pictures of themselves. However, she testified that none of the children touched each other. When asked if the defendant touched any of the children, she answered in the affirmative, but when asked where he touched the children, she testified that it was "in the den after we took our pictures of ourselves."

At trial, F.S., the grandmother of T.L.'s children, testified that B.G., T.G., and Br.G. all told her of inappropriate behavior by the defendant. According to F.S., B.G. told her the defendant had molested him and that he had made him and T.G. "play with each other" while the defendant took pictures while they were naked. However, F.S. acknowledged that B.G. did not tell her the defendant touched either him or T.G. She also suggested that B.G. told her that the defendant had done the same thing to

---

[3]She testified that she did not know what "rape" meant, but that the term frightened her.

5

Br.G. and their cousin, A.H. The reason B.G. had kept quiet, according to F.S., was that the defendant told B.G. he would kill B.G.'s mother if B.G. told anyone. According to F.S., Br.G. was the first to confide in her, followed by B.G. and T.G. However, when the grandmother made arrangements to have the children interviewed by the appropriate authorities, none of the children told the interviewer that anything inappropriate had been done to them or that they had been photographed or video recorded.[4]

Shortly after Sergeant Gleason received the complaint from T.L. and S.G., B.G. was interviewed by a representative of a local shelter facility. Thereafter, he and T.G. were subjected to several "counseling" sessions with another employee of the facility to help the boys feel free to "open up" concerning what had happened to them. After they went through the initial interview and counseling, and almost three months after Sergeant Gleason received the initial complaint, the boys were interviewed by Nicolette Joseph, a forensic interviewer who testified at trial. These July 24, 2007 interviews were video recorded and both video recordings were introduced into evidence.

In his video recorded interview with Ms. Joseph, B.G. acknowledged that it was not the first time he had been at the shelter facility. According to B.G., he had been in the facility when he was eight years old because the defendant had "messed with him" at that time. According to B.G., he woke up on one occasion to find the defendant's hand touching his private parts through his clothes. However, he only told his father and grandfather because Br.G. had told them that she was a victim of the defendant's inappropriate actions as well.

---

[4]The video recordings of the initial interviews were not introduced at trial.

6

B.G. stated in the interview that when he was nine years old, he saw the defendant touch Br.G. "down there" underneath her clothes. According to B.G., he was spying on Br.G. and the defendant through a crack in the door to the room they occupied at the time. He told Ms. Joseph that Br.G. told the defendant to stop, but that he could not see exactly what the defendant was doing at the time. On another occasion, when B.G. was eight years old and Br.G. was six, he claims to have seen the defendant taking pictures of Br.G. without her clothes. However, B.G. denied seeing the defendant take naked pictures of any of the other children and said that the defendant never made him touch anyone.

In his video recorded interview with Ms. Joseph, nine-year-old T.G. stated that, on one occasion while at his [T.G.'s] grandfather's house, the defendant touched his "private" with his hand. However, T.G. stated that the touching occurred outside his clothes and not directly on the skin. He further stated that B.G. and Br.G. told him the defendant had touched them on their privates underneath their clothing, and that B.G. told him that the defendant had taken pictures of B.G. and Br.G. However, T.G.'s response to many of Ms. Joseph's questions was simply "I don't know." T.G. did not testify at trial, and the only direct evidence from him is the interview with Ms. Joseph.[5]

One of R.H.'s former boyfriends, W.M., testified that during the three years he resided with R.H., A.H. had made an allegation to R.H. that "one of the boys touched her."[6] Additionally, T.L. testified that both B.G. and T.G. had been molested in 2000 while in foster care.

_____

[5]Br.G. also did not testify.

[6]W.M. construed the comment "one of the boys" to mean B.G. and/or T.G.

7

In finding the defendant guilty on the eight counts, the trial court noted that "the credibility, the believability of the reporting by the children" is the question "always in everyone's mind" in cases of this nature. After making that statement, the trial court concluded that it believed the testimony of the children because the three who presented any evidence on the offenses gave reports that were "basically consistent, in general," and that the inconsistency in the details lent credibility to their testimony because these inconsistencies indicated the testimony was not coached. In considering the statements of the children in the interviews with Ms. Joseph, the trial court noted that the interviews took place after the children reported incidents "in a comfortable setting, in a non-threatening setting, relat[ing] what occurred in their own words and without being [led]." The defendant disagrees with the trial court's analysis and asserts in his sole assignment of error that the evidence does not sufficiently support the verdicts.

### Sexual Battery Convictions

As previously stated, the essential element at issue with regard to the sexual battery convictions is whether the state established beyond a reasonable doubt that the defendant touched the anus or genitals of any of his victims with any instrumentality or any part of his body. Despite the conflicts in much of the evidence, A.H. did testify at trial that the defendant touched her on her "bottom" where she would "pee-pee from" on three occasions; B.G. stated in the interview with Ms. Joseph that the defendant "messed with him" by touching his genital area, but on top of his clothing; B.G. stated in the same interview that he saw the defendant touch Br.G.'s genitals underneath her clothing; and in the interview with Ms. Joseph, T.G. stated that the defendant touched his genitals once beneath his clothing. Thus, the

8

state presented evidence which, if true, establishes the essential element in these charges.

The trial court accepted this evidence as proof beyond a reasonable doubt and, when considered in light of our scope of review as set forth in *State v. Macon*, 957 So.2d 1280, we find no error in the trial court's determination in this regard. Therefore, we find no merit in the defendant's assignment of error as it relates to the defendant's conviction on four counts of sexual battery.

### *Molestation of a Juvenile Convictions*

As previously stated, with regard to the molestation convictions, the elements at issue are (1) whether the defendant committed a lewd or lascivious act upon the person or in the presence of the victim—and if he did, (2) whether the act was committed with the intention of arousing or gratifying his sexual desires or those of his victim; and (3) whether the act was committed by the use of (a) force, violence, duress, menace, psychological intimidation, or threat of great bodily harm, or (b) influence by virtue of a position of control or supervision over the victim.

B.G. testified at trial that the defendant instructed him and the other three children to undress and, while naked, to "play with each other" by touching each other's "private parts." He further testified that as he was touching A.H.'s private parts, the defendant was taking pictures. On the other hand, A.H. testified that the defendant made the children undress but denied touching anyone, or being touched by anyone, while undressed. While B.G. testified that the defendant took pictures of the naked children, A.H. testified that the defendant caused them to take pictures of themselves. Both agreed that the defendant remained clothed during the entire

9

experience and never touched any of the naked children. They both also testified that the defendant threatened to harm them or their mother if they told anyone.

In *State v. Prejean,* 45 So.2d 627, 629 (La.1950), the supreme court stated with regard to the definitions of "lewd" and "lascivious," as it pertains to the offense of indecent behavior with a juvenile, that:

> The word "lewd" means lustful, indecent, lascivious, and signifies that form of immorality which has relation to sexual impurity or incontinence carried on in a wanton manner. The word "lascivious" means tending to excite lust, lewd, indecent, obscene, relating to sexual impurity, tending to deprave the morals in respect to sexual relations. See Black's Law Dictionary (DeLuxe Ed.).

Put another way, a lewd or lascivious act is "lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner. *Id.* at 630. Thus, "a person knowingly engaged in *any* overt sexual activity performed in the physical proximity of a child enters a zone of danger in which he runs the risk that a trier of fact may later find that activity criminal in nature." *State v. Interiano*, 03-1760, p. 8 (La. 2/13/04), 868 So.2d 9, 15.

The trial court in the matter now before us concluded that the lewd and lascivious act contemplated by La.R.S. 14:81.2 was the defendant's act of directing the children to disrobe and act out sexually his instructions while photographing the children's actions. The trial court concluded "that it was his camera, over which he had control as well, and that that constitutes a lewd and lascivious act contemplated by the statute." The trial court further concluded that despite the fact the pictures were taken without his physical participation in the children's activities, they were taken "under his control, direction, and threats."

10

The supreme court has stated in *Interiano*, 868 So.2d at 16, that "in the absence of a physical touching upon the person of the child, La.R.S. 14:81(A) requires the knowing commission of a sexual act such that the child sees or senses that a sexual act is taking place, even if the child is not able to articulate or even comprehend what the offender is doing, for a violation to occur." *See also State v. Lowe*, 08-669 (La.App. 3 Cir. 12/10/08), 999 So.2d 194, *writ denied*, 09-54 (La. 9/25/09), 18 So.3d 80. In this case, the evidence, if believed, establishes that the defendant instructed the children to take off their clothes and to "play with each other" by touching their "private parts." We conclude that this is the knowing commission of an act which the children sensed as a sexual act despite their inability to articulate or comprehend the act itself. The trial court reached this factual conclusion and, applying the scope of review to which we are restricted, we find no error in this conclusion.

While there is no direct evidence that the defendant physically participated in the children's efforts to "play with themselves" other than to photograph the activity, a reasonable trier of fact could easily conclude that everything he orchestrated with the children was for the purpose of arousing or gratifying his sexual desires. Finally, the testimony of the children fully establish the fact that the acts were committed by the use of threat of great bodily harm.

We find no merit in this assignment of error.

### Error Patent Evaluation

In fulfilling our obligation under La.Code Crim.P. art. 920 to search the record for errors patent on the face of the appellate record, we find that the minutes of sentencing need correction.

11

At the April 19, 2010 sentencing hearing, the trial court imposed sentences on the convictions for molestation of a juvenile to be served without the benefit of parole, probation, or suspension of sentence, pursuant to La.R.S. 14:81.2(E)(1). However, the minutes of the sentencing proceeding do not reflect that these sentences were imposed without the benefit of probation, parole, or suspension of sentence. We remand this matter to the trial court with instructions to amend the minutes of the April 19, 2010 sentencing proceeding to correctly reflect the sentences imposed. *State v. Holloway*, 10-74 (La.App. 3 Cir. 10/6/10), 47 So.3d 56.

## DISPOSITION

We affirm the convictions in all respects. We remand the matter to the trial court with instructions to amend the minutes of the molestation of a juvenile sentencing proceeding to correctly reflect the sentences imposed.

**CONVICTIONS AFFIRMED. REMANDED WITH INSTRUCTIONS.**